798 F.2d 471
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Lonnie RICHARDS, Plaintiff-Appellant,
v.
Jim B. DUNBAR, Individually and as the Former Jailer of
Russell County, Kentucky, and Roger Pierce,
Individually and as the Former Deputy
Sheriff of Russell County,
Kentucky,
Defendants-
Appellees.
 No. 85-5557.
 United States Court of Appeals, Sixth Circuit.
 June 3, 1986.
 
 Before KENNEDY and MILBURN, Circuit Judges, and JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff-appellant, Lonnie Richards, a former inmate in the Russell County Jail in Jamestown, Kentucky, appeals the judgment for defendants-appellees, Jim B. Dunbar, the former jailer of Russell County, Kentucky, and Roger Pierce, the former deputy sheriff of Russell County, in this civil rights action. This case arose from plaintiff's arrest on July 27, 1980 and subsequent incarceration in the Russell County Jail. During the arrest, plaintiff received a cut on his face in an altercation with defendant Pierce. Plaintiff brought this action under 42 U.S.C. Sec. 1983 in the United States District Court for the Western District of Kentucky alleging that Pierce's intentional use of excessive and unreasonable force during the arrest violated plaintiff's rights under the fifth and fourteenth amendments to the United States Constitution and section 11 of the Kentucky Constitution. In addition to the cut, which bled profusely, plaintiff also suffered an epileptic seizure while in jail. Plaintiff, however, did not receive medical attention until August 2, 1980, when in response to a petition for a writ of habeas corpus which plaintiff filed on August 1, 1980, a state court judge ordered Dunbar to furnish plaintiff immediately with the services of a physician. Plaintiff's complaint also alleged that defendants-appellees' deliberate indifference to his serious medical needs constituted cruel and unusual punishment in violation of the eighth and fourteenth amendments to the United States Constitution and section 17 of the Kentucky Constitution and represented a violation of Dunbar's duties as a county jailer under Kentucky Revised Statutes Chapters 71 and 441.
 
 
 2
 Defendants-appellees answered and filed a counterclaim alleging abuse of process and malicious prosecution. The District Court bifurcated the case and held a bench trial on the 42 U.S.C. Sec. 1983 claims on December 8, 1983. On January 15, 1985, the District Court entered judgment for defendants-appellees on the 42 U.S.C. Sec. 1983 claims. The District Court declined to exercise pendent jurisdiction over the state law claims. On February 5, 1985, plaintiff moved to dismiss defendants-appellees' counterclaim and for entry of final judgment. The District Court granted the motions and entered final judgment on May 28, 1985.
 
 
 3
 On appeal, plaintiff raises two issues: (1) Whether the District Court erred in concluding that Pierce did not use excessive force in violation of the fourteenth amendment while arresting plaintiff; and (2) Whether the District Court erred in concluding that Dunbar's denial of numerous requests for medical attention over a six day period did not constitute "deliberate indifference" to an obvious medical need because plaintiff, while intoxicated, had initially stated that he did not desire medical attention. For the reasons stated below, we affirm the District Court's holding that Pierce did not use excessive force in arresting plaintiff. Since the District Court did not resolve several apparent factual inconsistencies, however, we reverse the judgment for Dunbar on the "deliberate indifference" claim and remand the case to the District Court for additional factual findings.
 
 I.
 
 4
 On the morning of July 27, 1980, plaintiff had an argument with his father, Titus Richards ("Titus"). Following the argument, Titus and plaintiff's brother, Weldon Richards, went to the home of Dan Hudson, the Russell County Sheriff. Titus told Sheriff Hudson that plaintiff had been drinking, had stolen J.D. Murray's checkbook, and had forged at least one check on Murray's account. Titus told Sheriff Hudson that if Sheriff Hudson did not get plaintiff away from Titus' home, Titus might kill plaintiff. Sheriff Hudson called defendant-appellee, Deputy Roger Pierce, and asked him to find out what was going on. When Pierce went to the Richards' residence, the District Court found that plaintiff's parents told Pierce that they did not want plaintiff there. When Pierce attempted to arrest plaintiff, a fight between plaintiff and Pierce broke out. During the altercation, the District Court found that "[Pierce] hit Lonnie on the head with either the pistol or his fist where his ring was, causing Lonnie to bleed profusely."
 
 
 5
 Plaintiff argues that the District Court erred in concluding that Pierce did not use unreasonable force while arresting plaintiff. The use of excessive or unreasonable force during an arrest can give rise to 42 U.S.C. Sec. 1983 liability. See generally Putman v. Gerloff, 639 F.2d 415, 420-21 (8th Cir.1981) (listing cases). The District Court, however, specifically found that: "[Pierce] also did not use unreasonable or excessive force. Plaintiff resisted arrest and was very combative."
 
 
 6
 Fed.R.Civ.P. 52(a) sets forth the appropriate standard governing appellate court review of a district court's findings of fact by providing in pertinent part:"Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." In United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948), the Supreme Court stated that: "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." As recently as Anderson v. City of Bessemer City, North Carolina, 105 S.Ct. 1504 (1985), the Supreme Court wrote: "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Id. at 1512 (citations omitted).
 
 
 7
 We hold that the District Court's finding that Pierce did not use unreasonable or excessive force is not clearly erroneous. Pierce testified that plaintiff was loud and belligerent during the arrest. Pierce testified while he was taking plaintiff from the bedroom, where he arrested plaintiff, to the living room in the Richards' house, plaintiff hit him on the right shoulder with his fist. Pierce admitted that he hit plaintiff back and that they scuffled in the living room. Pierce testified that plaintiff refused to go with him. Finally, Pierce testified that plaintiff would not get in the car and that Titus had to help him put plaintiff in the car. Plaintiff admitted that he refused to go with Pierce.
 
 
 8
 In Putman v. Gerloff, supra, the Eighth Circuit cited Johnson v. Glick, 481 F.2d 1028, 1033 (3d Cir.), cert. denied, 414 U.S. 1033 (1973), as setting forth the widely-accepted standard that courts should apply to determine whether a law enforcement officer used excessive force in making an arrest.
 
 
 9
 [A] court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.
 
 
 10
 639 F.2d at 420. Applying that standard to this case, the District Court could properly conclude that Pierce did not use excessive or unreasonable force in arresting plaintiff. Plaintiff claims that the District Court applied an incorrect standard and points to the statement in the District Court's opinion that:
 
 
 11
 Whether [Pierce] used the pistol or his fist, it did not amount to "deadly physical force" as defined in KRS 503.020, as the force was not used for the purpose of causing death or serious physical injury or which Pierce knew to create a substantial risk of causing death or serious physical injury.
 
 
 12
 A law enforcement officer can, of course, use unreasonable force in making an arrest without causing death or serious physical injury. Since the District Court, however, specifically found that "[Pierce] also did not use reasonable or excessive force," we affirm the judgment for Pierce on the claim alleging unreasonable force during the arrest.
 
 II.
 
 13
 Plaintiff argues that the District Court erred in holding that Dunbar's denial of numerous requests for medical attention for plaintiff over a six-day period did not constitute "deliberate indifference" to serious medical needs because plaintiff, while intoxicated, had initially stated that he did not desire medical attention. In Estelle v. Gamble, 429 U.S. 97, 105 (1976), the Supreme Court concluded that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under Sec. 1983." Although Estelle involved the eighth amendment, which only applies to convicted prisoners, this Court recently reiterated that those same principles apply, by virtue of the due process clause, to pretrial detainees. See Roberts v. City of Troy, 773 F.2d 720, 723 (6th Cir.1985).
 
 
 14
 During the altercation with Pierce, plaintiff received a cut, which bled profusely, on his face. After making the arrest, Pierce took plaintiff to the Russell County Jail. Although the record contains convicting evidence, the District Court made the following findings of fact:
 
 
 15
 Pierce took the plaintiff to the Russell County Jail, where the defendant jailer, Jim B. Dunbar, his wife, Malzora Dunbar, and Sheriff Hudson saw the plaintiff with the cut, being 3.5 centimeters long and 3 millimeters wide, on his cheek. Later in jail, while still being verbally abusive, the plaintiff had an epileptic seizure. Mrs. Richards had earlier asked that plaintiff see a physician. Other prisoners also asked for plaintiff to see a physician, but plaintiff declined to see one. Visitors, attorney Christine Freeman and Father Thomas Clark, also suggested later that plaintiff see a doctor. Dunbar refused until five days later, when he was ordered by a court to take plaintiff to a doctor. However, his refusal was primarily due to the fact that plaintiff did not want to see a physician.
 
 
 16
 Plaintiff did not see a doctor until August 2, 1980, when a state court judge ordered Dunbar to take plaintiff to a doctor. On August 1, 1980, plaintiff's attorney, Christine Freeman, had filed a petition for a writ of habeas corpus in the Russell Circuit Court asking that plaintiff receive medical attention. In an accompanying affidavit, plaintiff stated under oath that he had been denied the services of a physician for his serious medical needs.
 
 
 17
 The District Court, however, found that Dunbar's refusal to take plaintiff to see a doctor "was primarily due to the fact that plaintiff did not want to see a physician." Sheriff Hudson testified that after Pierce brought plaintiff to the Russell County Jail he asked plaintiff whether he wanted to go to the doctor and that plaintiff said that he did not want any medical treatment. Sheriff Hudson testified that plaintiff said instead that he wanted to sue Pierce. Transcript at 102. On cross-examination, Sheriff Hudson testified that Dunbar insisted that plaintiff go to a doctor. Id. at 111. Pierce testified that plaintiff did not request any medical attention in his presence. Pierce also testified that both Sheriff Hudson and Dunbar asked plaintiff if he wanted any medical attention. Id. at 123. Dunbar testified that plaintiff did not request any medical attention when Pierce brought him to the jail. Id. at 149. Consequently, the District Court's finding that plaintiff initially refused medical treatment is not clearly erroneous.
 
 
 18
 Plaintiff, however, also claimed that Dunbar refused later requests for medical attention. Plaintiff testified that he asked Jim B, Dunbar to get him some medical help or a doctor twice. Id. at 63. Dunbar testified that plaintiff did not at any time make any request for medical attention or to see a doctor. Id. at 150. Plaintiff also testified that he asked Mrs. Dunbar, who also worked at the jail, for medical attention several times. Id. at 63. Mrs. Dunbar did not testify at the trial. Although Dunbar admitted plaintiff may have made such a request to his wife, Dunbar testified that Mrs. Dunbar never asked him to get medical attention or a doctor for plaintiff. While Dunbar would not be liable under respondeat superior for his wife's deliberate indifference to plaintiff's serious medical needs, see Monell v. Department of Social Services, 436 U.S. 658, 694 n. 58 (1978); see also Hays v. Jefferson County, Kentucky, 668 F.2d 869, 872, reh'd denied, 673 F.2d 152 (6th Cir.), cert. denied, 459 U.S. 833 (1982), Dunbar admitted during another portion of his testimony that his wife would have told him if a jail inmate needed a doctor.
 
 
 19
 Q. Isn't it true that Father Clark asked you or your wife to take [plaintiff] to the doctor and you decided he didn't need one, and that's what you said?
 
 
 20
 A. He might have asked my wife.
 
 
 21
 Q. If he had asked your wife, would she have had authority to approve going to the doctor on her own?
 
 
 22
 A. I don't know. She might. I guess she would.
 
 
 23
 Q. Wouldn't she come to you?
 
 
 24
 A. Well, I might not have been there.
 
 
 25
 Q. But vou testified that you worked day and night, that you lived right next door, that one of you had to be there all the time. Wouldn't she generally come to you?
 
 
 26
 A. Yeah, I guess she would.
 
 
 27
 Transcript at 159-60. If Dunbar had knowledge, through his wife or others, of plaintiff's requests for medical attention, then he could be liable for deliberate indifference. The District Court, however, did not make specific findings whether anyone asked Dunbar to provide plaintiff with medical attention after the day of plaintiff's arrest or whether plaintiff continued to refuse medical treatment during the six days after his arrest.
 
 
 28
 The District Court found that plaintiff's mother, other prisoners, attorney Christine Freeman, and Rev. Thomas R. Clark, a Catholic priest, suggested that plaintiff see a doctor. Although the District Court could have found that plaintiff refused medical treatment after the requests by his mother and the other prisoners because those requests occurred on Sunday, July 27, 1980, the day Pierce arrested plaintiff, the requests by Fr. Clark and attorney Freeman occurred later in the week. Although Fr. Clark did not mention a specific day that he visited plaintiff, he testified that he called the legal defense office in Columbia after he left the jail. Id. at 82. Attorney Freeman testified that Fr. Clark called her on Thursday, July 31, 1980 and that she went to visit plaintiff that evening. Id. at 3-4.
 
 
 29
 Father Clark testified that after visiting plaintiff he told Mrs. Dunbar that he thought plaintiff's wound needed some medical attention. Clark testified that Mrs. Dunbar said she would look into the matter. Id. at 81. Freeman, plaintiff's attorney at the time, testified that she and Jeff White, a law clerk, asked Mr. and Mrs. Dunbar whether plaintiff could be given medical treatment or taken to a doctor. She testified that Dunbar responded by saying no without saying anything else or offering any explanation for his refusal. Id. at 5, 9. Dunbar denied that Christine Freeman ever asked him to take plaintiff to a doctor. Id. at 160. The District Court never resolved this inconsistency.
 
 
 30
 Although we affirm the portion of the District Court's order dismissing plaintiff's claim against Pierce for deliberate indifference to plaintiff's serious medical needs, we reverse the portion of the District Court's order dismissing plaintiff's deliberate indifference claim against Dunbar because the District Court did not make several essential factual findings and remand the case to the District Court for those factual findings. The District Court did not make any specific findings whether plaintiff continued to refuse medical treatment during the six days after his arrest but before the Russell Circuit Court ordered Dunbar to furnish plaintiff with a physician's services. The District Court did not decide whether attorney Freeman asked Dunbar to get medical attention for plaintiff. Finally, although the District Court found that plaintiff suffered an epileptic seizure in jail, the District Court did not decide whether plaintiff had a "serious illness or injury." While discussing plaintiff's deliberate indifference claim, the District Court stated: "Admittedly, [plaintiff] had been drinking, but his injury and epilepsy were not so extreme that he had to have medical attention to save his life." A jail inmate need not be in danger of dying before jail officials must provide or obtain medical treatment for a prisoner. Estelle v. Gamble, supra, speaks of a "serious illness or injury." 429 U.S. at 105.
 
 
 31
 Accordingly, we affirm the portion of the District Court order regarding the arrest, reverse the portion of the District Court order regarding Dunbar's deliberate indifference to medical needs, and remand the action to the District Court for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior Judge, United States District Court for the Eastern District of Michigan, sitting by designation