869 F.2d 1491
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Giles MacFARLAND, Administrator of the Estate of Marion H.
Gentry, Deceased, and Bruce A. Gentry, Ronald
Gentry, Gordon Gentry, and Carol Gentry
Howard, Plaintiffs-Appellants,
v.
OAKLAND COUNTY, Oakland County Sheriff's Department, Oakland
County Sheriff & Johannes F. Spreen, and Douglas
Molinar, Defendants-Appellees.
 No. 87-2068.
 United States Court of Appeals, Sixth Circuit.
 March 2, 1989.
 
 Before KENNEDY and NATHANIEL R. JONES, Circuit Judges and EUGENE E. SILER, Jr., Chief District Judge.*
 PER CURIAM.
 
 
 1
 In December 1983, defendant-appellee Douglas Molinar, an Oakland County police officer, was sent to the home of plaintiff's decedent Marion H. Gentry as a possible suicide-in-progress. Molinar allowed Gentry to leave her living room to use the bathroom after she made regurgitating sounds and indicated she was going to be sick. Rather than using the bathroom, she retrieved a shotgun and pointed it at Molinar, who shot and killed her in self-defense.
 
 
 2
 Plaintiffs brought suit under 42 U.S.C. Sec. 1983, as well as pendent state law negligence claims, against Molinar, Oakland County, the Oakland County Sheriff's Department, and the Oakland County Sheriff. The District Court, Duggan, J., granted summary judgment to defendants. Plaintiffs appeal only the summary judgment on the pendent state claims. They dispute the court's holding that there was no genuine issue of fact that Molinar's conduct was discretionary, rather than ministerial, and therefore protected by governmental immunity under Ross v. Consumers Power, 420 Mich. 567 (1984). Because we agree that Molinar's conduct was discretionary, although for a different reason than that given by the District Court, we affirm.
 
 
 3
 * On December 11, 1983, Oakland County Sheriff's Deputies Douglas Molinar and Michael McCabe were sent to decedent Marion Gentry's home in response to telephone calls by one or more persons that she was contemplating suicide. Gentry invited the officers into her living room, where she was sitting with a drink in her hand, crying, and talking on the phone to a police dispatcher who had contacted her after receiving the possible suicide-in-progress calls. McCabe asked her if she would like to go to the hospital. She agreed to do so and he called for an ambulance.
 
 
 4
 While waiting for the ambulance to arrive, Gentry appeared to have calmed down. McCabe stayed with her in the living room and Molinar stood in the foyer near the hallway entrance. Suddenly, she stood up and walked toward the hallway. Molinar stopped her and asked where she was going. He allowed her to leave to use the bathroom after she responded by making regurgitating noises and indicating that she was going to be sick.
 
 
 5
 Instead of going to the bathroom, however, decedent went to a bedroom and retrieved a shotgun. She pointed the gun at Molinar and advanced toward him with her finger on the trigger. He yelled at her to stop, but she kept coming, and he was forced to shoot after being backed up against a wall. After the first shot, she did not fall, but turned and pointed the gun at McCabe. Molinar then fired a second shot, and she was pronounced dead on arrival at the hospital.
 
 
 6
 On September 3, 1987, the District Court granted summary judgment to defendants on the Sec. 1983 claim, but denied it on the state law negligence claims. The court retained pendent state jurisdiction. Plaintiffs do not challenge the District Court's exercise of its discretion. See Roberts v. City of Troy, 773 F.2d 720 (6th Cir.1985). On October 9, 1987, Judge Duggan granted summary judgment on the state law negligence claims, explaining in a Supplemental Opinion that in its earlier Opinion it had
 
 
 7
 accepted, for the purposes of ruling on defendants' [summary judgment] motion, that plaintiffs would be able to introduce evidence that defendant Molinar, with knowledge of Mrs. Gentry's suicidal tendencies, allowed her to depart from the livingroom for "no asserted or apparent reason." The Court further concluded that if such facts could be proven by plaintiffs, then the officer's conduct in allowing her to leave the room could be deemed "ministerial" and therefore defendants would be deprived of the defense of governmental immunity. The Court further indicated in such Opinion that if the facts revealed that Mrs. Gentry communicated to Officer Molinar that she was sick then this Court concluded that the officer's decision in allowing her to leave the room would be a discretionary act on his part and the defense of governmental immunity would be available.
 
 
 8
 Subsequent to the issuance of such Opinion and Order, plaintiffs have stipulated that there will be no contrary evidence to refute [the officers'] testimony that Mrs. Gentry "either specifically said or by her actions claimed, that she was going to be sick while within their presence...."
 
 
 9
 In view of such stipulation, no disputed issue of fact exists and such discretionary conduct is protected by governmental immunity. Ross v. Consumers Power, 420 Mich. 567.
 
 II
 
 10
 Plaintiffs challenge the District Court's entry of summary judgment on the state claims on three grounds. First, they assert that Molinar's actions were ministerial, rather than discretionary, because the Oakland County Sheriff's Department (OCSD) allegedly has a policy of never permitting suicidal individuals out of an officer's sight and control. Second, they argue that even if Molinar's decision to allow decedent to leave his sight and control was discretionary, the negligent execution of that decision was ministerial, and therefore not entitled to immunity. Third, plaintiffs continue to maintain that Oakland County is vicariously liable for Molinar's actions on a respondeat superior theory. We find no merit to these arguments.
 
 
 11
 * The Michigan Supreme Court has set out three requirements for lower level governmental officials, which includes police officers,[1] to be immune from tort liability. The officials must be
 
 
 12
 1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority;
 
 2) acting in good faith; and
 
 13
 3) performing discretionary, as opposed to ministerial acts.
 
 
 14
 Ross, 420 Mich. at 592, 633-34.
 
 
 15
 It is not disputed that Molinar was acting in the course and scope of his employment and in good faith. The only issue is whether his acts were discretionary or ministerial. In Ross, the Michigan Supreme Court explained the distinction as follows:
 
 
 16
 "Discretionary-decisional" acts are those which involve significant decision-making that entails personal deliberation, decision and judgment. "Ministerial-operational" acts involve the execution or implementation of a decision and entail only minor decision-making.
 
 
 17
 420 Mich. at 592. Plaintiffs contend that the OCSD has an absolute policy of never allowing a suicidal person to leave an officer's sight and control. Under this reasoning, Molinar's acts involved only the "execution or implementation of a decision," i.e., he was required to keep the decedent in his sight and control, which was therefore ministerial and not entitled to immunity.
 
 
 18
 Plaintiffs' argument fails because it is based on the premise that Molinar's training at the police academy, in which an instructor allegedly instructed officers never to allow suicidal individuals out of their sight and control, constitutes an OCSD policy. First, such training does not constitute such a policy. In the hearing on defendants' summary judgment motion, plaintiffs themselves recognized that no such policy exists:
 
 
 19
 Mr. Janks [plaintiffs' attorney]: I don't think there's any evidence in this case that it's actually the Oakland County Sheriff's Department that has a policy saying: Don't let suicidal people out of your sight or control.... That's what is taught at the police academy, and we will prove that by the actual teacher of Officer Molinar in this case, who will come in and say: "That is what I taught the fellow."
 
 
 20
 Cf. Bandfield v. Wood, 421 Mich. 774, 775-76 (1985) (where low-level government officials' acts violate established procedures, such acts are ministerial); Trimper v. Headapohl, 162 Mich.App. 320, 324 (1987) (same); Tittinger By Tittinger v. Doeris, 678 F.Supp. 177 (E.D.Mich.1988) (same).
 
 
 21
 Second, even if the OCSD did have such a policy, plaintiffs were required as the nonmoving party in this dispositive summary judgment motion to "go beyond the pleadings and by [their] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986), quoting Rule 56(e), Fed.R.Civ.P. We agree with plaintiffs that "Rule 56 does not require the nonmoving party to depose her own witnesses," id.; however, plaintiffs' intimation that defendants should have deposed plaintiffs' expert witness as part of the summary judgment proceedings has no merit. It was the plaintiffs, as the nonmoving party, who were required to go beyond the pleadings in some manner, such as an affidavit from their expert, and they did not do so. In any event, because police academy training does not constitute a binding "policy" on the OCSD, the expert witness's testimony is not relevant.
 
 
 22
 Because allowing a potentially suicidal individual out of one's sight and control is not a policy, it is clear that Molinar's decision to allow decedent to leave the room was discretionary, rather than ministerial. Deciding to let decedent leave the room "entail[ed] personal deliberation, decision and judgment." It was not "the execution or implementation of a [policy] decision." Ross, 420 Mich. at 592. There simply was no policy to be executed.
 
 
 23
 The District Court reached the conclusion that Molinar's actions were discretionary, but on a different basis. As quoted above, the court focused on whether plaintiffs would be able to prove that Molinar allowed Gentry to leave the living room for "no asserted or apparent reason." The court reasoned that such an action would be ministerial, whereas allowing her to leave for a reason, i.e., to be sick, would be discretionary. If the OCSD actually had an absolute "sight and control" policy, we would have to consider plaintiffs' claim that Gentry's communication of a reason for violating the policy did not transform a ministerial act into a discretionary act. However, because there is no such policy, Molinar's acts are discretionary, and he is entitled to summary judgment as a matter of law under the governmental immunity standard set out in Ross.
 
 B
 
 24
 Plaintiffs next argue that even if Molinar's decision to allow decedent to leave the room was discretionary, the negligent execution of that decision was ministerial, and therefore not entitled to immunity and summary judgment. They cite several Michigan and Sixth Circuit cases for the proposition that government officials can be subject to tort liability for the negligent implementation of established procedures. See, e.g., Wilson v. Beebe, 770 F.2d 578 (6th Cir.1985) (after exercising discretion to arrest plaintiff, decision to attempt to handcuff plaintiff while holding a cocked gun was ministerial because it related to manner of executing arrest); Young v. Ann Arbor, on remand, 147 Mich.App. 333 (1985), lv den 425 Mich. 862 (1986) (government official subject to tort liability for negligent implementation of established policies and practices). The cases are inapposite; they all entail a fact pattern in which, at some point, there was an established procedure or policy to be carried out.
 
 
 25
 Plaintiff is "confusing the issues of immunity and negligence." Canon v. Thumudo, 430 Mich. 326, 335 (1988). As the Michigan Supreme Court explains,
 
 
 26
 The very concept of immunity presupposes that the activities complained of may have been negligently performed--i.e., in violation of the requisite standard of care. In protecting significant decision making on the part of public employees from tort liability, Ross intended "to ensure that a decision-maker is free to devise the best overall solution to a particular problem, undeterred by the fear that those few people who are injured by the decision will bring suit." Ross, supra, p. 631.
 
 
 27
 Thus, plaintiffs cannot bootstrap the discretionary-ministerial distinction into a negligence standard.
 
 C
 
 28
 Plaintiffs' final contention is that Oakland County and the OCSD are vicariously liable for Molinar's acts under a theory of respondeat superior. In view of our holding that Molinar is entitled to immunity, there can be no derivative liability. Moreover, the county would be immune from liability regardless of whether Molinar were immune. Under Ross, if the activity engaged in by a government official "constituted the exercise or discharge of a governmental function (i.e., the activity was expressly or impliedly mandated or authorized by constitution, statute, or other law), the agency is immune pursuant to Sec. 7 of the governmental immunity act." 420 Mich. at 625. The parties do not dispute that Molinar's police activities constituted a governmental function.
 
 
 29
 For the above reasons, the District Court's entry of summary judgment on all claims is AFFIRMED.
 
 
 
 *
 The Honorable Eugene E. Siler, Jr., Chief United States District Judge for the Eastern District of Kentucky and United States District Judge for the Western District of Kentucky, sitting by designation
 
 
 [1]
 See Wilson v. Beebe, 770 F.2d 578, 589 (6th Cir.1985)