875 F.2d 1239
 Janet M. DANESE, Personal Representative of the estate of
David Danese, deceased; Louis Danese; Daniel Danese;
Pamela Danese; Margaret Danese; Thomas Danese; Frances
Danese; and Louis Danese, individually, Plaintiffs-Appellees,
v.
Thomas A. ASMAN, individually and as Chief of Police for the
City of Roseville; Howard Hill, individually and as
Sergeant and Shift Commander for the City of Roseville
Police Department; Frederick Stein, individually and as
Sergeant for the City of Roseville Police Department;
Robert Peters, individually and as Inspector for the City of
Roseville Police Department; Gowsoski, R. Churchran,
Cardinal, Kenyon, individually and as Police Officers for
the City of Roseville Police Department, Jointly and
Severally, Defendants-Appellants.
Keith Pelt, et al., Defendants.
 No. 87-2039.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 18, 1988.
Decided May 26, 1989.
Rehearing and Rehearing En Banc Denied Aug. 18, 1989.
 
 Thomas E. Spencer (argued), Grand Rapids, Mich., J. Russell LaBarge, Jr. (argued), Roseville, Mich., for defendants-appellants.
 William Povlitz (argued), Petz & Povlitz, P.C., Grosse Pointe Woods, Mich., for plaintiffs-appellees.
 Joanne D. Stafford, City of Detroit Law Dept., Asst. Corp. Counsel, Detroit, Mich., amicus curiae, for defendants-appellants.
 Before NELSON and BOGGS, Circuit Judges, and EDWARDS, Senior Circuit Judge.
 BOGGS, Circuit Judge.
 
 
 1
 The defendants/appellants are Roseville, Michigan, police officers and police officials who appeal the district court's denial of their motion for summary judgment in the plaintiffs' suit under 42 U.S.C. Sec. 1983. The plaintiffs seek to hold the defendants liable for the suicide, in a Roseville jail, of David Danese. The defendants contend that they should be dismissed as individual defendants on the grounds of qualified immunity. We hold that the defendants are entitled to qualified immunity and therefore reverse.
 
 
 2
 * This case arose out of events in Roseville, Michigan in the early morning hours of November 9, 1982. The Roseville police department received a report of a suspicious car parked in a residential area. Roseville police officers (and defendants) Gowsoski and Chuchran, out on patrol, investigated the report. They discovered a car sitting out in the middle of a side street. The officers knocked on the window and woke up a man they later found out was David Danese. The officers described Danese as obviously intoxicated. The officers moved the car to the side of the road, put the keys on the floor of the car, and told Danese not to drive.
 
 
 3
 At about 2:50 a.m., the officers observed Danese driving the same car they had seen earlier. The officer pulled the car over and gave Danese some field sobriety tests. They found that Danese could not walk a straight line or name the alphabet. They arrested Danese for driving while intoxicated, handcuffed him, and took him to the Roseville police station.
 
 
 4
 When Danese arrived at the station, he was given a breathalyzer test by police officer Cardinal. He was found to have a blood alcohol content of .13%, a reading over the legal limit of .10%. The plaintiffs allege that, after his arrest, Danese cried intermittently and made repeated remarks to Gowsoski, Chuchran, and Cardinal that he wished he were dead. (The officers have stated that they do not recall Danese crying or making such remarks.) The officers searched Danese and found three black and green capsules. Danese stated that the pills were for pain he suffered due to an injury to his face. The officers confiscated the drugs. They also removed Danese's belt and shoes.
 
 
 5
 Both parties agree that Danese told a fellow prisoner that they, meaning the police, take a prisoner's shoelaces because they do not want the prisoner to commit suicide.[1] The plaintiffs claim that Danese discussed ways of committing suicide and said that he would commit suicide. (The officers deny that he said he would commit suicide.) The officers state that Danese was 'jovial.' At one point, though, Danese told Cardinal that he was $13,000 in debt and said "I wish I wasn't here." Danese called his mother, and one of the officers noticed that Danese cried toward the end of the call. Danese was then placed in a cell. The cell was not a special detoxification cell, and it had horizontal bars in the caging. The television monitor used to watch the prisoners was inoperative.
 
 
 6
 Between 5:15 and 5:25 a.m., officer Cardinal heard screaming and banging coming from one of the cells. He discovered that Danese was causing the noise. Danese told Cardinal that he wanted a cigarette. Cardinal told him he could not give him one due to the jail rules. Danese then said he would hang himself if he did not get one. Cardinal said he was sorry and left. He then went to his superior, Sergeant Hill, and told him what happened. Hill told Cardinal to watch Danese.
 
 
 7
 At 5:56 a.m., Cardinal went to check on the prisoners. He found Danese hanging by his shirt from a bar in his cell. Cardinal called Sergeant Stein, who had just come on duty. The two officers, along with officer Kenyon, cut Danese down and called for an ambulance. An ambulance from the fire house next door arrived a couple of minutes later, but Danese was pronounced dead within an hour.
 
 
 8
 The plaintiffs, consisting of the representative of Danese's estate and members of his family, have sued, among others, all the police officers (Officers) mentioned here, including Gowsoski, Chuchran, Cardinal, and Kenyon, and their supervisors (Officials), including Hill, Stein, police chief Asman, and police inspector Peters. The plaintiffs sued under 42 U.S.C. Sec. 1983, alleging numerous violations of Danese's constitutional rights.
 
 
 9
 In August 1986, these defendants filed motions to dismiss the suits against themselves as individual defendants on the grounds of qualified immunity. In May 1987, the district court denied most of these motions, allowing, however, the plaintiffs to amend one of their claims before deciding on qualified immunity. After the amendment, the defendants moved for summary judgment on the qualified immunity issue. In September 1987, the district court again found for the plaintiffs, denying that the defendants had qualified immunity. See Danese v. Asman, 670 F.Supp. 709 (E.D.Mich.1987) and 670 F.Supp. 729 (E.D.Mich.1987). The defendants then availed themselves of their right, pursuant to Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985), to file this interlocutory appeal on the immunity issue.[2]
 
 II
 
 10
 The Supreme Court, following its decision in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), recently clarified its analysis of qualified immunity claims in Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The Court made clear that "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." Id., 107 S.Ct. at 3038. (citations omitted) Thus, the plaintiff must show that the constitutional right alleged to have been violated was a clearly established right at the time of the challenged action. Poe v. Haydon, 853 F.2d 418, 425 (6th Cir.1988).
 
 
 11
 The right in question, however, cannot be simply a generalized right, like the right to due process. Anderson, 107 S.Ct. at 3038. It must be clearly established in a "particularized" sense, so that "the contours of the right" are clear enough for any reasonable official in the defendants' position to know that what the official is doing violates that right. Id. at 3039. This particularity requirement does not mean that the very action in question has been held unlawful; it does mean, though, that in the light of the preexisting law, the illegality of the action must be apparent. Ibid.
 
 
 12
 In Anderson, for example, the court of appeals disallowed qualified immunity, holding that the established right was the right to be free from warrantless searches unless the officers have probable cause and there are exigent circumstances. Ibid. The Supreme Court reversed, holding that this right was not sufficiently particularized. It must be clear that the search was illegal under the particular circumstances faced by the police, for there are many cases where the police reasonably believe that a search is legal. Police officers should not be personally liable if they act in ways they reasonably believe are lawful. Ibid. The relevant, fact-specific question in qualified immunity cases is whether any official could have, in light of the preexisting law, reasonably believed that his action was lawful. Id. at 3040; Poe, 853 F.2d at 423 ("The relevant inquiry focuses on whether a reasonable official in the defendant's position could have believed his conduct to be lawful, considering the state of the law as it existed when the defendant took his challenged actions.")
 
 III
 
 13
 The district court held that the plaintiffs stated two causes of action against the individual officers. The first was an action for the deprivation of Danese's fourteenth amendment due process right not to be punished while in pretrial detention. The second was for the deprivation of a fourteenth amendment due process right to be free from unsafe confinement.
 
 
 14
 The plaintiffs base their first action on the Supreme Court decision in Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). In Bell, the Court held that, under due process of law, pretrial detainees may not be punished because they have not yet been judged guilty. Id., 441 U.S. at 535, 99 S.Ct. at 1872. One of the forms that this punishment can take is the denial of medical care. This court, as well as other circuits, have held that the Eighth Amendment cruel and unusual punishment analysis used by the Court in Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976), is applicable to pretrial detainees. See Roberts v. City of Troy, 773 F.2d 720, 722 (6th Cir.1985). Estelle held that a prisoner's rights were violated if the jailers exhibited a deliberate indifference to his medical needs. Estelle, 429 U.S. at 104, 97 S.Ct. at 291. Pretrial detainees are entitled to at least as much protection as convicted prisoners, so, as the district court concluded, Bell establishes that jail officials violate the due process rights of their detainees if they exhibit a deliberate indifference to the medical needs of the detainees that is tantamount to an intent to punish.
 
 
 15
 This conclusion is supported by two Sixth Circuit cases that predate Bell but are consistent with a deliberate indifference standard. In Fitzke v. Shappell, 468 F.2d 1072, 1076 (6th Cir.1972), this court held that where "circumstances are clearly sufficient to indicate the need of medical attention for injury or illness", anyone who is incarcerated, whether for a serious crime or to sleep off a drunk, has the due process right to adequate medical care. This holding was reaffirmed in Scharfenberger v. Wingo, 542 F.2d 328, 330, 331 (6th Cir.1976). The court in Wingo also explicitly stated that a prisoner had a due process right to adequate medical care even if his injuries were self-inflicted. Ibid. In sum, then, the law which existed at the time of the defendant officers' actions clearly established that pretrial detainees were, at the least, entitled to jailers who were not deliberately indifferent to their medical needs.[3]
 
 
 16
 The district judge found that the plaintiffs' allegations constituted a claim of deliberate indifference against the police. Danese told them that he was going to kill himself and talked about methods of killing himself, but the officers did nothing. He was placed fully clothed in a regular cell. The plaintiffs contend that the situation is no different than one in which a prisoner says his leg is broken but gets no medical care. The officers, they argue, chose to ignore Danese's call for help. They conclude that it was clearly established in Bell, Fitzke, and Wingo that the officers owed him adequate medical care. Thus, they should be personally liable.
 
 
 17
 The district court held that the second cause of action stated by the plaintiffs was based on the deprivation of the fourteenth amendment due process right to be free from unjustified intrusions on personal security. This right is derived from the Supreme Court's decision in Youngberg v. Romeo, 457 U.S. 307, 315-16, 102 S.Ct. 2452, 2457-58, 73 L.Ed.2d 28 (1982), holding that there is a liberty interest in personal security and that this right is not extinguished by either involuntary commitment or being jailed. The Court held that the Constitution requires that courts make certain that professional judgment was exercised as to the conditions of confinement; if such judgment was exercised, there is no liability under the due process clause. Id. at 323, 102 S.Ct. at 2462.
 
 
 18
 The district court found that that the plaintiffs' allegations stated a claim under this clearly established right. By ignoring Danese's threats of suicide and placing him in a regular cell with horizontal bars, as opposed to a detoxification cell, the officers, the plaintiffs contend, did not exercise professional judgment in determining whether the conditions of confinement were safe. Youngberg, the plaintiffs conclude, should have told them they were violating Danese's constitutional rights.
 
 
 19
 We find, however, that the rights the district court cites as having been clearly established were not particularized rights as required by Anderson and, thus, were not sufficient to deny the defendants qualified immunity. The "right" that is truly at issue here is the right of a detainee to be screened correctly for suicidal tendencies and the right to have steps taken that would have prevented suicide. The general right to medical care, for example, is not sufficient to require a police officer to have known that he had to determine that Danese was seriously contemplating suicide and stop him from following through.
 
 
 20
 We note that the rights to medical care and physical security were established in cases that were factually quite different. For example, Estelle, Fitzke, and Wingo all dealt with deliberate indifference to a patient who requested medical care. It is one thing to ignore someone who has a serious injury and is asking for medical help; it is another to be required to screen prisoners correctly to find out if they need help. The right established in those cases simply would not give reasonable officers notice that their actions in this case were illegal.
 
 
 21
 Our conclusion is supported by the decision of the Fifth Circuit in Gagne v. City of Galveston, 805 F.2d 558, 560 (5th Cir.1986), cert. denied, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987). The court in Gagne held that a policeman who, in violation of a prison regulation, did not remove a belt from a detainee who later hung himself was entitled to qualified immunity. The court held that no cases were presented "suggesting that a constitutional duty to protect prisoners from self-destructive behavior was clearly established at the time Gagne was arrested." Ibid. As the events in Gagne took place after the events here and the plaintiffs and the district court in this case have not presented any cases that contradict the the Fifth Circuit's holding, we are led to the same conclusion the court reached in Gagne.
 
 
 22
 We reach a similar conclusion as to the unsafe confinement claim. Neither the plaintiffs nor the district court cite any case that holds that police officers must detect suicidal prisoners and put them into suicide-proof facilities. The officers had no notice that they were required to place Danese in a detoxification cell with no horizontal bars, All Youngberg says is that involuntarily committed individuals have a right to safe confinement. Beyond this general statement, it offers no guidance as to the duty of an officer concerning suicide detection and prevention.
 
 
 23
 We conclude, then, that the district court erred in holding that qualified immunity did not apply as to the officers. The court below did not cite any cases showing that the officers had the constitutional duty to determine if Danese was seriously inclined to commit suicide and then stop him. The story might be different if the police were certain that Danese would attempt suicide and just ignored it, or if Danese had told them he needed psychological help. If a prisoner asks for and needs medical care, it must be supplied. However, in this case, the officers could have reasonably thought that they were acting legally when they treated Danese as they would any prisoner. Without precedent establishing an unambiguous right to have the police diagnose one's condition as prone to suicide, these officers cannot be held liable for not taking extraordinary measures to restrain Danese.
 
 IV
 
 24
 The district court also held that the plaintiffs stated two causes of action against the officials. The first cause of action alleges that the defendants are liable for the deprivation of Danese's rights to adequate medical care and physical security because they, as supervisors of the line officers, failed to institute any procedures regarding the screening of detainees and suicide prevention, as well as not providing training in these matters. This failure constituted deliberate indifference to Danese's medical needs.
 
 
 25
 In support of this analysis, the court cited Hays v. Jefferson County, 668 F.2d 869 (6th Cir.), cert. denied, 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982). This court in Hays held that supervisors may be liable for the unconstitutional acts of their subordinates "where there is essentially a complete failure to train the police force, or training that is so reckless or grossly negligent that future police misconduct is almost inevitable." Id. at 874. A plaintiff must also demonstrate a causal relationship between the failure to train and the conduct of the officers. Ibid. The district court held that this duty to train and establish procedures so as to not produce police misconduct was clearly established at the time of the events in this case.
 
 
 26
 We hold that Hays only establishes the general principle that supervisors are liable for grossly negligent or nonexistent training that leads to the violation of constitutional rights. It does not say that suicide procedures and training must be provided.[4] The district court's analysis is, in fact, dependent upon its conclusions as to the officers' liability. If the officers were not subject to a clearly established constitutional duty, their supervisors cannot be liable for not training them to meet such a duty.[5]
 
 
 27
 The second claim stated by the plaintiffs against the officials was based on the deprivation of Danese's due process right to personal security, as set out in Youngberg and described above. The plaintiffs allege that the defendants violated Danese's clearly established right to safe confinement by confining decedent in a defective building. They allege that the building should have contained a detoxification cell without horizontal bars and with a working television monitor, maintaining that the grossly negligent failure to provide these things showed that the defendants did not apply professional judgment in creating safe confinement conditions.
 
 
 28
 We must point out, much as we did with the officers, that neither the plaintiffs nor the district court cite any cases holding that there exists a clearly established right to these suicide prevention facilities. Without a showing that the particular rights claimed to be violated were clearly established in law at the time of the alleged injury, we will not find public officials acting within their discretion personally liable for the violations of these rights. No such showing has been made here. Thus, we REVERSE the denial of the defendants' motions for summary judgment and order that the claims against the individual defendants be dismissed.
 
 
 29
 GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge, dissenting.
 
 
 30
 Defendants in this case appeal an order denying their motion to dismiss this civil rights action on the grounds of qualified immunity. This is a case in which the widow of deceased; David Danese, brought an action against the Chief of Police of Rose Hill, Michigan, and officers who had been on duty at the Rose Hill Jail when David hung himself in said jail. It is Janet Danese's contention that when the officers on duty had noticed that Danese was both drunk and threatening suicide, they had an obligation to provide either hospitalization or a cell block under observation which might have prevented his suicide. There had been a previous suicide in this same jail.
 
 
 31
 Judge Harvey denied qualified immunity to the defendants in this case and they appealed. See Danese v. Asman, 670 F.Supp. 709 (E.D.Mich.1987) and 670 F.Supp. 729 (E.D.Mich.1987). In Scharfenberger v. Wingo, 542 F.2d 328, 330 (6th Cir.1976), this court stated: "Defendants expend considerable effort seeking to prove Scharfenberger injured himself. We regard this issue as irrelevant because a prisoner's custodians cannot lawfully deny him adequate medical care even in instances of deliberate self injury." See also, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); Roberts v. City of Troy, 773 F.2d 720, 723 (6th Cir.1985); Fitzke v. Shappell, 468 F.2d 1072, 1076 (6th Cir.1972).
 
 
 32
 The majority relies on the recent Supreme Court case of Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) in reversing the court below. However, the Court also noted in Anderson:
 
 
 33
 "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent." Id. at 3039. (Citations omitted).
 
 
 34
 In this case, the pre-existing body of both Supreme Court and Sixth Circuit case law cited above made the unlawfulness of defendants' actions apparent.
 
 
 35
 I would affirm Judge Harvey's denial of qualified immunity and remand the case for trial.
 
 
 
 [1]
 The other prisoner, David Pastorisa, has stated, in a deposition, that Danese was upset about being arrested but was otherwise calm. He does not recall Danese ever asking for medical attention
 
 
 [2]
 The defendants also raise in this appeal the issue of whether Danese's siblings have standing to sue under Sec. 1983. The district judge ruled that they do have such standing and also refused to certify an interlocutory appeal, sensibly holding that resolving this issue would not resolve any of the central issues of the litigation. The lower court also correctly pointed out that any verdict for these plaintiffs is subject to correction on appeal after the trial. Thus, we will not consider this issue
 
 
 [3]
 It should be noted, however, that only very recently has this court specifically applied the deliberate indifference standard in a jail suicide case, Molton v. City of Cleveland, 839 F.2d 240, 243 (6th Cir.1988). The court, in a claim against the municipality rather than individual officers, did not find that the city had a policy causing officers to be deliberately indifferent. Ibid
 
 
 [4]
 Indeed, in a recently decided case that does in fact deal with the training of police as to jail suicide prevention, this court held that a municipality was not liable for inadequate training. Beddingfield v. City of Pulaski, 861 F.2d 968 (6th Cir.1988). The court ruled that the plaintiff had to show that the city deliberately set out to train its police officers inadequately in suicide techniques, a more difficult standard to meet than Hays. Id. at 971. In addition, the Supreme Court has recently held that a plaintiff, in order to prevail on a claim against a city for inadequate training of its police officers, must show that the failure to train amounted to deliberate indifference to the rights of the plaintiff. City of Canton v. Harris, et al., --- U.S. ----, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). The fact that even the current law does not clearly support the plaintiffs makes far more implausible a finding that the rights claimed by the plaintiffs were clearly established at the time of Danese's death
 
 
 [5]
 The plaintiffs argue that certain Michigan regulations required certain suicide prevention procedures, training, and facilities and that the defendants' violation of these regulations demonstrates a breach of duty. However, the state statutes and regulations do not create federal constitutional rights. Davis v. Scherer, 468 U.S. 183, 194, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984). Thus, the violation of those state mandates does not cause the offending officials to lose their qualified immunity. Ibid