Joyce DAWSON, guardian of Sherri Lynn Young, on Behalf of Walter YOUNG, a/k/a Clifford Young, deceased, Plaintiff,

v.

CAMPBELL COUNTY, TENNESSEE, Ron McClellan, Sheriff, and Charles Stanley Green, Jailor, Defendants.

No. 3:93–cv–0646.

United States District Court, E.D. Tennessee, Northern Division.

Dec. 9, 1994.

Michael W. Ritter, Whitfield & Ritter, P.A., Oak Ridge, TN, for plaintiff.

Robert H. Watson, Jr., and Arthur F. Knight, III, Watson, Hollow & Reeves, Knoxville, TN, for defendants.

## MEMORANDUM OPINION

JORDAN, District Judge.

### I

This is a civil action for damages under 42 U.S.C. § 1983 for an allegedly wrongful death.[1] The plaintiff says that her decedent, Mr. Young, was arrested on November 2, 1992, on a charge of driving a motor vehicle while under the influence of an intoxicant; that after his arrest and a blood alcohol content test at a hospital, Mr. Young was transported to the Campbell County, Tennessee, jail and delivered over to the custody of the sheriff of the defendant county, acting through the defendant deputy, the jailer; and that while he was in the jail, Mr. Young committed suicide by hanging himself. The plaintiff asserts that the defendants deprived her decedent of his right to due process protected by the Fourteenth Amendment.[2]

The plaintiff's claims are best expressed by paragraph XVI of her complaint:

> Acting under color of law and pursuant to official policy or custom, Defendants Sheriff Ron McClellan and Campbell County knowingly, recklessly, or with deliberate indifference and callous disregard of Plaintiff's [decedent's] rights, failed to instruct, supervise, control and discipline on a continuing basis Defendant [Deputy Green] in his duties to:
>
> 1) Protect incarcerated prisoners from doing harm to themselves.
>
> 2) To specially or routinely protect intoxicated prisoners attempting to do harm to themselves.
>
> 3) Taking ordinary or special measures to monitor prisoners such as Walter Young.

It can be seen that her claims against all defendants depend on the existence of a duty on the part of the defendant jailer, who was an employee of the defendant county and a subordinate of the defendant sheriff, to take care to prevent the plaintiff's decedent from harming himself while in custody in the Campbell County jail.

The civil action is before the court for consideration of the defendants' motion for summary judgment [doc. 15]. The court has considered the defendants' brief in support of their motion [doc. 16], to which are attached an affidavit and an unsigned copy of an affidavit, a copy of the transcript of the discovery deposition of the defendant jailer, and a videotape recording of the defendant jailer interviewing the plaintiff's decedent for intake into the jail; the signed affidavit of the Tennessee Highway Patrol trooper who ar-

---

1. The plaintiff also states a claim for relief under the Tennessee Governmental Tort Liability Act, Tennessee Code Annotated §§ 29–20–101, *et seq. See* part II, *infra.*

2. The plaintiff refers also to the Equal Protection Clause of the Fourteenth Amendment in her complaint, but she has not come forward in this civil action with any allegation or evidence of discrimination of any kind which is prohibited by this constitutional guarantee. The plaintiff also cites in her complaint the Eighth Amendment guarantee against cruel and unusual punishment, but it is undisputed that her decedent was a detainee, not a convicted prisoner. The Eighth

Amendment therefore has no application to this case. The defendants concede in this case that the Due Process Clause of the Fourteenth Amendment provided to Mr. Young protection from injury caused by deliberate indifference to the same extent that the Eighth Amendment would have provided had Mr. Young been in custody after conviction of a criminal offense.

For the distinction between the prohibition of cruel and unusual punishment and the guarantee of due process, *see Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979); *Roberts v. City of Troy,* 773 F.2d 720, 723 (6th Cir.1985).

rested the plaintiff's decedent [doc. 17]; and the plaintiff's response [doc. 21] to the motion for summary judgment, with a supporting brief with the plaintiff's attorney's affidavit attached [doc. 22], and another brief in opposition to the motion for summary judgment, with several exhibits attached [doc. 23]. The court has also considered the defendants' reply brief [doc. 24], as well as the defendants' response to the plaintiff's motion for summary judgment [doc. 26], and the defendants' brief in support of their response to the plaintiff's motion for summary judgment [doc. 27].[3] The court finds that oral argument would not assist it in ruling on this motion.

The undisputed evidence in this case, presented by the testimony, in the form of affidavits and a deposition, of the officers who had custody of Mr. Young before his suicide, and presented also by the videotape recording of his intake at the Campbell County jail, shows that Sergeant Don Baird of the Tennessee Highway Patrol arrested Clifford Rolland Young on a charge of driving under the influence of an intoxicant, on November 2, 1992, between 3:45 and 4 o'clock in the afternoon. After Sergeant Baird caused Mr. Young to pull his automobile off the highway and onto a shoulder, and asked Mr. Young to step out of his automobile, "[t]he driver could not stand without holding onto the side of his [automobile, and his] eyes were watery, his face was flushed, his speech was slow and slurred. He was also having trouble keeping his balance." Sergeant Baird arrested Mr. Young and placed him in the back of the highway patrol cruiser. While in the back seat of the cruiser, the plaintiff's decedent attempted to get out of the cruiser, and in doing so, bent an inside door handle.

Sergeant Baird called for assistance in taking Mr. Young for a blood alcohol content test while Sergeant Baird waited on a tow truck. In summarizing his experience with Mr. Young, Sergeant Baird describes the plaintiff's decedent's conduct as "uncooperative but not combative," and states that he did not perceive the plaintiff's decedent to be depressed. He states that the decedent did not give any indication of a suicidal intention. For this reason, the sergeant did not advise Trooper Bobby Smith, into whose custody he delivered Mr. Young, that he believed that Mr. Young needed to be watched as a potential suicide threat.

Sergeant Baird does state in his affidavit that Mr. Young, while in the back of the sergeant's cruiser, bent a door handle, and beat his head against the window glass. According to Sergeant Baird, "This is not unusual for an intoxicated person to do. I have had many intoxicated arrestees hit their heads on the door window."

In Trooper Smith's affidavit, he states that he arrived with Mr. Young at the hospital for the blood alcohol content test at 4:38 p.m., and that

[w]hile I was attempting to park my patrol unit, Mr. Young, sitting in the rear of my vehicle, began hitting himself in the face. I asked Mr. Young what he was doing, and he stated that he was trying to make his nose bleed. I thought Mr. Young was hitting himself in an attempt to set me up for a lawsuit. Therefore, I asked him to stop, and he began laughing and said, "You're pretty smart." He then stopped hitting himself in the face. I noticed no injury to Mr. Young as a result of his actions.

Trooper Smith, like Sergeant Baird, saw nothing in the plaintiff's decedent's conduct which indicated that Mr. Young wished to take his own life. Trooper Smith therefore did not advise the jailer, Deputy Green, that Mr. Young needed to be watched. Trooper Smith describes his reaction to the news that Mr. Young had killed himself as being "shocked."

The videotape recording of Mr. Young's intake at the Campbell County jail shows nothing of a suicidal intention. While Mr. Young appears obviously intoxicated in the film, he is careful to check that the jailer counts his money accurately. In the film,

---

**3.** The plaintiff's first brief filed in this civil action [doc. 22] appears to have been intended to serve as a brief in support of a motion for summary judgment on the ground that the parties have entered into an accord and satisfaction in this case. The plaintiff filed the brief, but no such motion. The court will nevertheless consider this issue raised by the plaintiff.

Mr. Young gives some money so that another can purchase a pack of cigarettes for him, and he specifies that he wants unfiltered cigarettes. He twice asks for matches, and is twice told that he cannot smoke in the drunk tank. He smokes two cigarettes, one after the other, while waiting, seated, at the desk. There is no hint in his behavior or speech of any violent intent towards himself or others.

The jailer, Deputy Green, testified that he perceived nothing in accepting Mr. Young into custody to warn of a risk of suicide. When Mr. Young was first placed in the drunk tank, he kicked and beat on the door, but the jailer did not find this unusual, given his prior experience with occupants of the tank.

In opposing the defendants' motion for summary judgment, the plaintiff attacks the veracity of the log of drunk tank inspections, and points to inconsistencies between the log and the deposition testimony of the jailer, Deputy Green. Viewing the evidence in the light most favorable to the opponent of the motion, the plaintiff, it appears that almost an hour passed between when Mr. Young was placed in the drunk tank and when Deputy Green, making an inspection round in the drunk tank area, discovered Mr. Young's body, hanging by his shirt from the bars in the door to his cell.

In the context of a case concerning a juvenile detainee's attempted suicide, the court of appeals for this circuit has explained the applicable law under 42 U.S.C. § 1983 and the Eighth and Fourteenth [4] Amendments:

> Officials may be shown to be deliberately indifferent to [a detainee's psychological needs which result in suicidal tendencies] without evidence of conscious intent to inflict pain. However, the conduct for which liability attaches must be more culpable than mere negligence; it must demonstrate deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference.

Horn by Parks v. Madison County Fiscal Court, 22 F.3d 653, 660 (6th Cir.), cert. denied, —— U.S. ——, 115 S.Ct. 199, 130 L.Ed.2d 130 (1994) (citations omitted).

■ In the context of the qualified immunity of public officials from liability for allegedly unlawful official action, the Court of Appeals for the Sixth Circuit has held that a detainee does not have a clearly established right to be screened correctly for suicidal tendencies at the time of intake into a detention facility. Danese v. Asman, 875 F.2d 1239 (6th Cir.1989), cert. denied, 494 U.S. 1027, 110 S.Ct. 1473, 108 L.Ed.2d 610 (1990). Furthermore, the Danese court held, if the officers who had custody of the detainee who committed suicide were not subject to a clearly established constitutional duty to screen detainees for suicidal tendencies, "their supervisors cannot be liable for not training them to meet such a duty." Id. at 1245 (footnote omitted).

At least one court of appeals for another judicial circuit has held that there may be found to be clearly established a right possessed by intoxicated detainees to be screened for suicidal tendencies. Simmons v. City of Philadelphia, 947 F.2d 1042 (3d Cir.1991), cert. denied, 503 U.S. 985, 112 S.Ct. 1671, 118 L.Ed.2d 391 (1992). However, this decision does not provide a basis for finding such a clearly established right in this circuit. The plaintiff's decedent in Danese, supra, was intoxicated at the time of his arrest and incarceration. In Horn by Parks, supra, the Court of Appeals for the Sixth Circuit acknowledged the decision in Simmons, but declined to find any such clearly established right in favor of juvenile detainees. Furthermore, the plaintiff here has not cited Simmons, and has not attempted to make a statistical showing like the one made in that case concerning the propensity of intoxicated detainees to suicide.

■ Applying the body of law discussed above to the undisputed facts in this case, the court concludes that the defendants are entitled to judgment as a matter of law, because the plaintiff has not shown any evidence to

---

**4.** The Fifth Amendment's guarantee of due process applies in cases concerning detainees held in federal institutions. See Bell v. Wolfish, supra n. 2.

create a genuine issue of fact concerning whether the plaintiff's decedent gave to the arresting officers and the jailer any indication that he might commit suicide. There is nothing in this record on the basis of which it might be said that the defendants should have observed the plaintiff's decedent more closely and frequently, or that the absence of closer and more frequent observation was a proximate cause of Mr. Young's death.

In the alternative, the court concludes that the defendants sheriff and deputy are entitled to qualified immunity in this case as a matter of law, for the reasons discussed above, and that the plaintiff's claims against these defendants are subject to dismissal for this reason, too.

■ In opposing the defendants' motion, the plaintiff points to evidence that the defendant jailer was inadequately trained, that the jail was understaffed on the date of her decedent's suicide, and that the jailer disobeyed instructions or guidelines of which he was aware and which required him to check detainees in the drunk tank more frequently than he did. In the absence of a violation of the plaintiff's decedent's federal constitutional[5] rights, however, this evidence has no bearing on whether the plaintiff's claims under 42 U.S.C. § 1983 are subject to dismissal. "[S]tate statutes and regulations do not create federal constitutional rights," and therefore, "the violation of those state mandates does not cause the offending officials to lose their qualified immunity." *Danese v. Asman, supra,* 875 F.2d at 1245 n. 5 (citation omitted). "The mere failure to comply with a state regulation is not a constitutional violation." *Roberts v. City of Troy, supra,* 773 F.2d at 726 (citation omitted).

## II

■ In pleading a cause of action under the Tennessee Governmental Tort Liability Act, T.C.A. §§ 29-20-101, *et seq.,* against the defendant sheriff and the defendant deputy (the jailer), the plaintiff invoked this court's pendent jurisdiction, and did not allege any other ground of jurisdiction of the subject matter, such as the diversity jurisdiction.

The parties have referred in their briefs to the plaintiff's state-law claims in only the most glancing terms. Resolution of these claims involves difficult issues of sovereign immunity with respect to alleged negligent and non-negligent conduct, which would be better resolved by a Tennessee court. *See Doe v. Sullivan County, Tennessee,* 956 F.2d 545, 559–60 (6th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 187, 121 L.Ed.2d 131 (1992). In light of this and of the dismissal of all of the plaintiff's claims which arise under federal law, the court will exercise its discretion under *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and decline to exercise its pendent jurisdiction of the plaintiff's state-law claims. *Compare Roberts v. City of Troy, supra,* 773 F.2d at 726–27. The court will therefore dismiss these claims without prejudice.

## III

As is stated above, the plaintiff has resisted summary judgment in this civil action on the ground in part that the parties entered into an accord and satisfaction of the plaintiff's claims. The defendants have treated the plaintiff as having moved this court to enforce the alleged accord and satisfaction by way of the summary judgment procedure. Whatever agreement these parties did or did not reach, summary judgment would be inappropriate in this case, because the recollections of opposing counsel stated in their affidavits unfortunately differ sharply.

■ "An accord and satisfaction is a type of contract and is governed by the law of contracts." *R.J. Betterton Management Services, Inc. v. Whittemore,* 733 S.W.2d 880, 882 (Tenn.Ct.App.), *perm. app. denied, id.* (Tenn.1987), *on subsequent appeal,* 769 S.W.2d 214 (Tenn.Ct.App.1988), *perm. app. denied, id.* (1989) (citations omitted). Such a contract requires an offer to give something in satisfaction of a disputed claim and an acceptance of that something in satisfaction of the claim, and so whether an accord and satisfaction exists depends on the intentions of both parties at the time of their transac-

---

**5.** The plaintiff does not rely on any federal statu-   tory right in this civil action.

tion. *Id.* at 882–83. Furthermore, it is a rule of the law of contracts in general "that the acceptance of an offer must exactly and precisely accord with the terms of the offer." *Ray v. Thomas,* 191 Tenn. 195, 202, 232 S.W.2d 32, 35 (1950).

 Considering opposing counsel's affidavits in the light of this body of law, the court concludes that either denying the defendants' motion for summary judgment on the ground of accord and satisfaction or enforcing the alleged accord and satisfaction by way of summary judgment in the plaintiff's favor would be error in this case. In his own affidavit, the plaintiff's counsel states that when he communicated his client's acceptance of the defendants' offer in the amount of $5,000.00, he asked that the defendants cover some of the plaintiff's discovery expenses. This could be construed to have been a counter-offer, and therefore a rejection instead of an acceptance.

For the reasons stated, the court will grant the defendants' motion for summary judgment, and dismiss the plaintiff's claims against the defendants in this civil action. While the court declines to enforce the accord and satisfaction alleged by the plaintiff, it does so without prejudice, leaving the plaintiff free to seek judicial enforcement of this alleged contract in an appropriate forum in which the differing versions of the parties' negotiations can be heard fully, and counsel may withdraw from their representations of these parties to appear as witnesses.

*ORDER*

For the reasons stated in the court's memorandum opinion filed simultaneously with this order, the court finds the defendants' motion for summary judgment [doc. 15] well taken, and it is **GRANTED.** It is **ORDERED** that the plaintiff's claims against the defendants arising under federal law are **DISMISSED** with prejudice, and that her claims against the defendants arising under Tennessee law are **DISMISSED** without prejudice, the court declining to exercise pendent jurisdiction of these claims arising under Tennessee law.

To the extent that the plaintiff's papers filed in this civil action may be read as a motion for summary judgment on the ground of accord and satisfaction, the court finds this motion not well taken, and it is **DENIED,** without prejudice to the right of the plaintiff to bring a civil action in a court of competent jurisdiction to enforce the contract of accord and satisfaction which she alleges she entered into with the defendants.

The court having disposed of all claims in this civil action, it is **ORDERED** that this civil action is **DISMISSED.**