**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0768n.06
Filed: October 17, 2006

**05-3617**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| THOMAS A. SHADE, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CITY OF MIDDLETOWN, OHIO, et al., | ) | SOUTHERN DISTRICT OF OHIO |
| | ) | |
| Defendants-Appellees. | ) | |

Before: KEITH, MERRITT, and DAUGHTREY, Circuit Judges.

**MARTHA CRAIG DAUGHTREY, Circuit Judge.** The plaintiff, Thomas Shade, appeals from the district court's grant of summary judgment to the City of Middletown, Ohio, and to various individual defendants involved in the arrest, incarceration, and medical treatment of Shade. Specifically, the plaintiff contends that the defendants were deliberately indifferent to his medical needs while he was held in jail, that the district court erred in failing to grant his motion to amend his complaint to substitute named defendants for "John Doe" defendants, and that the district court should have exercised jurisdiction over his state law medical malpractice claim. We find no reversible error and affirm.

The relevant facts of this case were adequately presented in the district court's memorandum order granting summary judgment to the defendants and need not be

repeated in detail here. In broad terms, the record indicates that Shade apparently contracted an undiagnosed case of West Nile Virus at some point before he was incarcerated in the city jail in August 2002. He had left work early on August 26, suffering from a high fever, nausea, and vomiting. When he was arrested on an outstanding warrant the following day, he told booking officers that he was not feeling well from the effects of a cold, and he was given a medical slip. Officials at the jail contacted a nurse practitioner, Nancy Hogan, who attended Middletown jail inmates under the supervision of Dr. George Kaiser. She gave instructions for his overnight care and then came to the jail to examine him shortly after noon the next day. She noted at that time that he was running a fever of 102.7 degrees and had been vomiting, and she gave him medicine to ameliorate both conditions.

Hogan treated Shade over the next two days, preliminarily diagnosing the cause of his fever as gastroenteritis or a possible kidney infection. During this period, his fever was gradually reduced to 99.1 degrees, and the nausea was brought under control. However, in the early morning hours of August 30, Shade's condition worsened, and at 5:00 a.m., he was taken to the hospital emergency room by squad car. He remained in a coma for 30 days, under treatment for what was ultimately identified as West Nile Virus, and suffered permanent disabilities as the result of the disease.

Shade filed a civil rights complaint under 42 U.S.C. § 1983 against the City of Middletown, the chief of police, the arresting "John Doe" officers, and three "John Doe"

members of the jail personnel, two of whom were later identified as Dr. Kaiser and Nurse Hogan. The district court eventually granted the defendants' motion for summary judgment, finding that the individual defendants had not been deliberately indifferent to the plaintiff's serious medical needs, that the plaintiff's injuries were not the result of city policy and, therefore, that the plaintiff had failed to establish a constitutional violation. The court declined to rule on the plaintiff's state law action for medical malpractice. The plaintiff now appeals the district court's judgment, which we review *de novo*. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

As is now well-established, a plaintiff seeking relief pursuant to 42 U.S.C. § 1983 must demonstrate not only that he was deprived of a constitutional right, but also that the deprivation occurred under color of state law. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). Because § 1983 is not itself a source of substantive rights, however, a plaintiff must identify specific constitutional sources for such claims. *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989).

In this case, the plaintiff asserts that the constitutional right abridged by the defendants is the right of pretrial detainees not to be subjected to punishment prior to an adjudication of guilt. *See, e.g.*, *Bell v. Wolfish*, 441 U.S. 520, 534 (1979). The Sixth Circuit has consistently held that the Eighth Amendment's cruel and unusual punishment analysis used by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), is applicable, through the Fourteenth Amendment, to pretrial detainees. *See Danese v. Asman*, 875

F.2d 1239, 1243 (6th Cir. 1989). Thus, "jail officials violate the due process rights of their detainees if they exhibit a deliberate indifference to the medical needs of the detainees that is tantamount to an intent to punish." *Id.*

The test of whether such a constitutional violation occurred has both an objective and a subjective component. "The objective component requires that the deprivation alleged must be 'sufficiently serious.'" *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "To satisfy the subjective requirement, [the plaintiff] must show that the [defendants] had 'a sufficiently culpable state of mind.'" *Id.* This subjective deliberate indifference standard means "that a prison official may be held liable . . . for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Thus, a plaintiff must show that a government official "subjectively perceived a risk of harm and then disregarded it." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). Moreover, this burden is not light; even "'an official's failure to alleviate a significant risk that *he should have perceived but did not*, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.'" *Id.* (quoting *Farmer*, 511 U.S. at 838) (emphasis added in *Comstock*).

In this case, there can be little dispute that prolonged fever and vomiting by a pretrial detainee presents a "sufficiently serious" situation. Shade has, therefore, established at

least the objective criterion necessary to prove a constitutional violation. The facts presented to the district court, however, fall short of showing that the defendants "subjectively perceived a risk of harm and then disregarded it." Although Nancy Hogan did not come to the jail to see Shade until early in the afternoon on the day after his arrest, she did make suggestions for his treatment when contacted by phone shortly after his initial incarceration. Once she had examined the plaintiff, she began a course of medication and observation that ultimately resulted in a drop in Shade's fever from 102.7 degrees to 99.1 degrees and appeared to provide the plaintiff relief from the nausea and vomiting he had been experiencing. Over the span of approximately 36 hours, Hogan also personally examined or observed the plaintiff three times and, on a fourth occasion, had a correctional officer check Shade's temperature for her. She ran at least two urine tests on the plaintiff, examined his ability to flex and move his head, and checked his blood pressure and heart rhythms. Obviously, as events unfolded, it became clear that Hogan failed to diagnose correctly that the plaintiff was suffering from West Nile Virus, a condition that is notoriously difficult to diagnose in the absence of laboratory test results.

But, it is also clear from the record that, contrary to the plaintiff's allegations, defendant Hogan did not callously ignore the serious medical condition from which Shade was suffering. Instead, she closely monitored that condition and took reasonable steps to address the outward manifestations of the illness. Nevertheless, in an effort to demonstrate the district court's error in granting summary judgment to the defendants in this matter, Shade argues that Hogan's actions and alleged inactions can be equated with

those of the defendants in *Blackmore v. Kalamazoo County*, 390 F.3d 890 (6th Cir. 2004).

*Blackmore*, however, involved a situation in which a pretrial detainee complained for more

than 48 hours about severe, stabbing abdominal pains. *See id.* at 894. Despite the pleas

for medical assistance, the defendants in that case did not even summon a medical

professional to examine Blackmore. Instead, the sole treatment undertaken by correction

officers for more than two days was the simple dispensation of antacids to Blackmore. *See

id.*

Even a cursory examination of the facts in *Blackmore* and their comparison with the

the medical treatment offered to Shade indicate the radical differences between these two

cases. Nurse Hogan's diagnosis ultimately proved to be incorrect, but her treatment

represented a reasoned, good-faith effort to treat his symptoms. Defendant Hogan's

actions clearly did not exhibit the recklessness or callous disregard for the plaintiff's well-

being that was exemplified in *Blackmore* and in similar decisions finding § 1983 liability.

Indeed, the plaintiff has pointed to no evidence indicating that Hogan failed to take

reasonable measures to address the risks presented by Shade's serious medical condition.

The plaintiff's arguments that Dr. Kaiser was deliberately indifferent to Shade's plight

are likewise not supported by evidence in the appellate record. Shade faults Kaiser for not

personally examining the plaintiff either in jail or at the hospital and incorrectly states that

"nowhere is it documented that Nurse Hogan ever conferred with Kaiser regarding Shade."

In fact, Kaiser's deposition testimony is clear that he spoke with Hogan about the plaintiff's

condition no later than 7:00 a.m. on August 29, 2002. He further testified that he must have later discussed the case with Hogan because "it would be unlikely that she would give injections without calling me." Kaiser's reliance upon the expertise of his partner to evaluate illnesses is not tantamount to an abandonment of his medical responsibilities to the plaintiff, especially when the appellate record and the history of interaction between the doctor and nurse practitioner indicate that the two professionals did indeed confer about their patient and his treatment. The district court thus did not err in concluding that Kaiser also was not deliberately indifferent to the plaintiff's serious medical needs.

Shade also seeks to impose liability upon the City of Middletown. Although § 1983 does apply to municipalities and local governments, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), we have consistently noted that such a defendant is "not . . . liable for every misdeed of its employees and agents." *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1117 (6th Cir. 1994). Indeed, "'municipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483-84 (1986) (Brennan, J.) (plurality opinion)). Phrased differently, § 1983 liability will be imposed upon a municipality only when the alleged injury results from "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts . . . may fairly be said to represent official policy." *Monell*, 436 U.S. at 694. But, in this case, the plaintiff can point to no "policy or custom" of the City of Middletown that would countenance, much less

encourage, unconstitutional treatment of pretrial detainees. In the absence of such official sanction of unconstitutional treatment, and given the fact that the actions of Hogan and Kaiser cannot legitimately be considered deliberately indifferent to Shade's plight, the district court did not err in granting summary judgment to the city as well on this claim.

Shade next asserts error in the district court's failure to rule upon his motion to amend his original complaint in order to replace the John Doe defendants with the names of the individuals learned by the plaintiff during the discovery process. In addressing the parties' motions for summary judgment, however, the district judge clearly recognized that the John Doe defendants were actually Officers Flack and Rogers of the Middletown Police Department, Major Schwarber of the Middletown Police Department, Dr. Kaiser, and Nurse Practitioner Hogan. The district court's determination that no deliberate indifference was shown toward Shade, the denial of the plaintiff's summary judgment motion, and the dismissal of all causes of action raised by Shade thus renders unnecessary a resolution of the motion to amend.

Finally, we find no abuse of discretion in the district court's decision not to maintain jurisdiction over the plaintiff's state law claims.

For these reasons, we AFFIRM the judgment of the district court.

**DAMON J. KEITH, Circuit Judge**, **concurring**.  I write separately because although I agree that the district court did not err in determining that defendants' acts or omissions failed to rise to deliberate indifference, I disagree with the majority opinion's characterization of Nurse Nancy Hogan's conduct as being "reasonable" or executed in "good-faith."  *See* maj. op. at 5-6.  Accordingly, I can only concur in the judgment.