KAREN NELSON MOORE, Circuit Judge,
concurring in part and dissenting in part.
I agree with Judge Cudahy in Part II. A.1 that summary judgment should not be granted on the issue of whether Rice committed a constitutional violation. However, I do not believe that the grant of qualified immunity to Rice is justified in this case, and I therefore respectfully dissent.
We assess claims of qualified immunity according to a three-step test:[1]
First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiff ] show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.
Sample v. Bailey, 409 F.3d 689, 695-96 (6th Cir.2005) (alteration in original) (quoting Feathers v. Aey, 319 F.3d 843, 848 (6th Cir.2003)). “Qualified immunity must be granted if the plaintiff cannot establish each of these elements.” Id. at 696 (internal quotation marks omitted). Rice is not entitled to qualified immunity on the basis of the first step of this test, because it “there is a genuine issue of fact as to whether Rice violated Perez’s Eighth Amendment constitutional right.” Majority Op. at 427.
In analyzing the clearly-established prong of the test, the majority states that our precedents “were not enough, on their own, to alert a reasonable caseworker that Rice’s conduct was deliberately indifferent *437 under the circumstances.” Majority Op. at 428. However, we have held that “once a prisoner has been deemed suicidal, it is clearly established that the prisoner is entitled to continuing medical treatment.” Majority Op. at 428 (citing Comstock v. McCrary, 273 F.3d 693, 711 (6th Cir.2001), cert. denied, 537 U.S. 817,123 S.Ct. 86,154 L.Ed.2d 22 (2002)). The majority distinguishes this case from Comstock on the basis that “Perez was not deemed to be suicidal at the time he was moved to the single cell,” and that Perez is thus alleging “a right to a correct assessment of his suicide risk or an effective suicide-monitoring arrangement.” Majority Op. at 428 (citing Danese v. Asman, 875 F.2d 1239, 1244 (6th Cir.1989), cert. denied, 494 U.S. 1027, 110 S.Ct. 1473, 108 L.Ed.2d 610 (1990)). I do not agree with the characterization of the issue in this case as a mere question of screening, because it is based solely on Rice’s conclusion at the November 18, 2002 meeting that Perez was not suicidal. As I will explain below, our precedent does not permit us to rely on Rice’s summary dismissal of Perez’s risk of suicide — in light of strong evidence to the contrary — to conclude that Perez was in fact “not deemed to be suicidal.” Majority Op. at 428. Instead, I believe that the record compels the conclusion that this case is analogous to and governed by Com-stock and that the right in question was clearly established well before the events in question here.
We are required to view the facts in the light most favorable to Perez. Comstock, 273 F.3d at 701 n. 3. The record demonstrates that Perez “attempted suicide in his cell in October 2002, only a month or so before his successful suicide in November 2002.” Majority Op. at 424-25; see also Joint Appendix (“J.A.”) at 94 (Rice Dep. at 28). “To be sure, Dr. Hemachandra opined that [Perez] gave no indication of suicidal ideation during his final evaluation on November 8, 2002.” Perez v. Oakland County, 380 F.Supp.2d 830, 841 (E.D.Mich. 2005). However, in the time period following this meeting “Rice learned ... that [Perez] had continued to refuse his medications, that he had not sought or obtained Dr. Hemachandra’s approval of this course of action during their most recent session, and that he had experienced problems in a 10-man cell and had been stealing from his fellow inmates.” Id. at 843; see also J.A. at 101-02 (Rice Dep. at 54-60). Also, “Rice presumably was aware that Plaintiff had never received any of the counseling recommended by Dr. Hemachandra.” Perez, 380 F.Supp.2d at 843. In her meeting with Perez, Rice concluded that he was not suicidal; however, she also noted that his insight was limited and his judgment was poor. J.A. at 102 (Rice Dep. at 60). Finally, Perez presented expert testimony “stating that individuals who suffer from schizophrenia and have made past suicide attempts are more likely than others to attempt suicide again.” Majority Op. at 7; J.A. at 569 (Letter from Emanuel Tanay, M.D., P.C., to Kenneth J. Wrobel, Jr. dated Jan. 22, 2004 at 10). Given these facts, we must assume that Perez was still at risk of suicide at the time of his meeting with Rice.
In order to determine that Perez was not suicidal at the time that he was moved to the single cell, the majority disregards all of the above-listed facts and focuses solely on Rice’s November 18, 2002 determination. However, it is this determination itself and Rice’s subsequent failure to seek medical advice that “constituted-the deliberate indifference to [Perez’s] serious medical needs.”[2] Comstock, 273 F.3d at *438 704. The facts of this case are analogous to the situation presented in Comstock, because in that case McCrary (the defendant) released Montgomery (the decedent) from suicide watch on the basis of an interview in which Montgomery stated that he was not considering suicide. Com-stock, 273 F.3d at 698-99. McCrary argued that he did not have subjective knowledge of Montgomery’s risk of suicide; however, we held that “the proper analysis requires us to ask whether McCrary perceived that Montgomery was suicidal when he commenced his evaluation of Montgomery [on the day that Montgomery was released from suicide watch and subsequently committed suicide].” Id. at 704. Similarly, the proper analysis in this case requires consideration of all of the evidence available to Rice at the time that she made her determination to place Perez in a single cell. This evidence demonstrates that Rice was aware of Perez’s risk of suicide and that Perez consequently had a clearly established right to continuing medical treatment.
Finally, I believe that Rice acted objectively unreasonably in light of Perez’s clearly established right to continuing medical treatment. As described above, Rice was aware of Perez’s suicidal tendencies and the fact that he had previously been under close supervision because of these tendencies. Perez, 380 F.Supp.2d at 843 n. 10; see also J.A. at 99 (Rice Dep. at 45-46). The evidence — read in the light favorable to Perez — -supports the conclusion that a reasonable person with Rice’s knowledge would have sought medical advice before moving Perez to a single cell without special-watch status. I would accordingly reverse the district court’s grant of summary judgment as to the issue of qualified immunity for Rice.

. "[T]he ... three-step approach correctly encompasses the Supreme Court's approach to qualified immunity claims and serves to ensure government officials the proper protection from civil suit under the law.'' Sample v. Bailey, 409 F.3d 689, 696 n. 3 (6th Cir.2005).

. In fact, Judge Cudahy acknowledges that "Rice's notes of her November 18, 2002 counseling session can ... be viewed as focusing unduly on Perez’s problems with other in *438 mates, without considering his mental health needs and whether he would be at a risk of suicide if placed in a single cell.” Majority Op. at 425.