773 F.2d 720
 Wesley ROBERTS, Personal Representative of the Estate of
David Roberts, Deceased, Plaintiff-Appellant,
v.
The CITY OF TROY and Forrest O. Fisher, Jointly and
Severally, Defendants- Appellees.
 No. 83-1334.
 United States Court of Appeals,
Sixth Circuit.
 Argued July 19, 1984.
Decided Sept. 30, 1985.
 
 Julie H. Hurwitz (argued), John P. Quinn (argued), Detroit, Mich., for plaintiff-appellee.
 Bernard P. McClorey (argued), Livonia, Mich., Jeannette A. Paskin, Detroit, Mich., for defendants-appellees.
 Before KENNEDY, Circuit Judge, CELEBREZZE, Senior Circuit Judge, and NEESE, Senior District Judge.*
 CORNELIA G. KENNEDY, Circuit Judge.
 
 
 1
 Plaintiff's decedent David Roberts hanged himself in the defendant City of Troy's jail. This action brought under 42 U.S.C. Sec. 1983 asserted that David Roberts' constitutional rights were violated by the failure of defendant Fisher, the Chief of Police of the City of Troy, to promulgate and enforce procedures to identify potential suicides and prevent their occurrence. The jury returned a verdict for defendants. Plaintiff appeals from the denial of his motion for judgment notwithstanding the verdict and for new trial. He also appeals from the summary judgment for defendants on the pendent state claims. We affirm the judgment on the 1983 claims, and on the pendent state claim against the City of Troy. We reverse the summary judgment in favor of Fisher on the pendent state claims.
 
 
 2
 Roberts was arrested on September 17, 1977 for fraudulent use of a credit card. When stopped by a store security officer he plunged through a glass door in an attempt to escape and received serious cuts. He was taken by the police to a local hospital where he was treated. He was cooperative with hospital personnel but uncommunicative and withdrawn from the police officers.
 
 
 3
 He was then booked at the police station. There was no special screening or questioning to determine if he was a high suicide risk. He was permitted to make a phone call and placed in a cell. He was given his medication as prescribed. In accordance with procedures at the Troy jail he was observed at least once during each clock hour, that is, once between 12 and 1 o'clock, once between 1 and 2 o'clock, once between 2 and 3 o'clock, etc. Regulations promulgated by the Michigan Department of Corrections and applicable to local jails required visual checks of each inmate at least once every 60 minutes. Some time during the next morning Roberts made another telephone call and spoke to his mother. The police cadet checking Roberts' cell saw him at 10:42 a.m. At approximately 11:50 a.m., a police officer found Roberts hanging in his jail cell. Efforts to revive him were unsuccessful and he was pronounced dead on his arrival at the hospital.
 
 
 4
 Roberts' personal representative, first his mother, then after her death his brother, brought this suit. The complaint charged the City of Troy, the Chief of Police, and various police officers with violating Roberts' constitutional rights under 42 U.S.C. Sec. 1983; the defendants were also charged with negligence and gross negligence under Michigan law. Before trial, the District Court granted summary judgment under Sec. 1983 in favor of the police officers, and denied it to Police Chief Forrest O. Fisher and the City of Troy. The state law counts were dismissed as to the police officers.[1] Summary judgment on the state law counts was granted to Fisher.
 
 
 5
 At trial, the plaintiff attempted to demonstrate that proper screening at the jail would have shown that Roberts fitted the profile of an individual at high risk of committing suicide in a lockup, and should have been monitored more closely. The plaintiff also attempted to show that the failure of the Troy Police Department to comply with state regulations requiring monitoring every 60 minutes was a contributing cause of Roberts' death. The case was submitted to the jury on a deliberate indifference standard. The jury returned a verdict for defendants, and the District Court ordered the case dismissed. This appeal followed.
 
 1. Deliberate Indifference Standard
 
 6
 The essence of plaintiff's claim is that David Roberts had a constitutional due process right to reasonably necessary medical care while incarcerated; that he had a serious and obvious medical need for precautions designed to prevent a suicide; that defendants through acts, omissions, customs and policies, and practices, were negligent and grossly negligent (i.e., deliberately indifferent) in their failure to take the necessary precautions; and that the defendants' negligence and gross negligence substantially increased the risk that David Roberts would die by suicide. (Plaintiff's Brief, p. 1). The instructions to the jury permitted recovery only if defendants exhibited deliberate indifference. Plaintiff did not object to the instruction that was given.
 
 
 7
 The seminal case with respect to the constitutional due process right of pretrial detainees is Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Its holding is succinctly summarized in Block v. Rutherford, --- U.S. ----, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984):
 
 
 8
 Four Terms ago, in Bell v. Wolfish ... we considered for the first time, in light of these security concerns, the scope of constitutional protection that must be accorded pretrial detainees. The respondents in Wolfish challenged numerous conditions of their confinement at the pretrial detention facility in New York City and various policies and practices of that institution. We held that, where it is alleged that a pretrial detainee has been deprived of liberty without due process, the dispositive inquiry is whether the challenged condition, practice, or policy constitutes punishment, "[f]or under the Due Process Clause, a detainee must not be punished prior to an adjudication of guilt in accordance with due process of law." Id., at 535, 99 S.Ct., at 1872 (footnote omitted).
 
 
 9
 In addressing the particular challenges in Wolfish, we carefully outlined the principles to be applied in evaluating the constitutionality of conditions of pretrial detention. Specifically, we observed that "[a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." Id., at 538, 99 S.Ct., at 1873 (citation omitted). Absent proof of intent to punish, we noted, this determination "generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].' "
 
 
 10
 Plaintiff does not claim that in failing to have in place procedures to reduce the likelihood of Roberts' accomplishing the suicide defendants intended to punish him. Rather, in accordance with the holding in Bell v. Wolfish that "pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners," id. at 545, 99 S.Ct. at 1877, plaintiff claims that his decedent's rights under the eighth amendment were violated by "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). ("We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' (citation omitted) proscribed by the Eighth Amendment." Id. at 104, 97 S.Ct. at 291.) Roberts, as a pretrial detainee rather than a convicted prisoner, was not within the protection of the eighth amendment; however, the eighth amendment rights of prisoners are analogized to those of detainees under the fourteenth amendment, to avoid the anomaly of extending greater constitutional protection to a convict than to one awaiting trial. See Norris v. Frame, 585 F.2d 1183, 1187 (3d Cir.1978). See also Bell v. Wolfish, supra.
 
 
 11
 Plaintiff argues that although the case was submitted to the jury on this basis, the court's charge defining deliberate indifference constitutes reversible error. Plaintiff did not object to this instruction. Under Rule 51, Fed.R.Civ.P., failure to object waives the right to appeal from an incorrect instruction. The plaintiff's argument that he implicitly objected by offering a different instruction is not persuasive, see Kropp v. Ziebarth, 601 F.2d 1348, 1356-57 (8th Cir.1979). Rule 51 can be satisfied by less than a formal objection, but "only if it is clear that the judge was made aware of the possible error in or omission from the instructions." Transcontinental Leasing, Inc. v. Michigan National Bank, 738 F.2d 163 (6th Cir.1984). Here the plaintiff did nothing to make the court aware of his opposition to the language defining deliberate indifference.
 
 
 12
 Plaintiff also argues that he may recover under Sec. 1983 on the basis of a failure to exercise due care in failing to prevent suicides of pretrial detainees. Again, plaintiff did not object to the failure to give such an instruction. The transcript is replete however with arguments between counsel for the plaintiff and the court over using a negligence standard. Plaintiff argues that he repeatedly made known to the court his position that he should be permitted to recover on the basis of negligence and that this case falls within the category of exceptions to Rule 51 in which "the failure to object may be disregarded if the party's position has previously been made clear to the court and it is plain that a further objection would have been unavailing." Lang v. Texas & Pacific Railway Co., 624 F.2d 1275, 1279 (5th Cir.1980). Since we find that plaintiff was not entitled to an instruction on negligence we need not decide if that claimed error was preserved.
 
 
 13
 The plaintiff essentially argues that a claim is established under Sec. 1983 by showing an official's negligence in the face of a pervasive and unreasonable risk of harm. This standard is derived from cases dealing with assaults on prisoners by other prisoners. See, e.g., Lovell v. Brennan, 728 F.2d 560 (1st Cir.1984); Gullatte v. Potts, 654 F.2d 1007 (5th Cir.1981); Withers v. Levine, 615 F.2d 158 (4th Cir.), cert. denied, 449 U.S. 849, 101 S.Ct. 136, 66 L.Ed.2d 59 (1980).[2] Under this standard, a plaintiff must still show deliberate indifference, and not merely negligence:
 
 
 14
 [T]he test is whether prison administrators are taking reasonable steps to prevent a pervasive risk of harm. A pervasive risk of harm entails much more than mere negligence. In essence, the pervasive risk would exist because the administrators are taking no steps to control violence. Thus, for a pervasive or constant risk to exist, officials would have to be intentionally indifferent to that risk.
 
 
 15
 ... mere negligence is not enough. An official would have to be intentionally indifferent or in reckless disregard before liability in a 1983 action is established.
 
 
 16
 Massey v. Smith, 555 F.Supp. 743, 747 (N.D.Ind.1983); Risner v. Duckworth, 562 F.Supp. 378 (N.D.Ind.1983).
 
 
 17
 Moreover, the standard urged by plaintiff has not been recognized by the Sixth Circuit in prison assault cases; the court has looked for "gross negligence or deliberate indifference on the part of the officials to appellant's risk of injury," observing that "mere negligence on the part of prison officials is not sufficient to give rise to culpability under the eighth amendment." Stewart v. Love, 696 F.2d 43, 44 (6th Cir.1982). Moreover, the prison assault situation is not as analogous to suicide in custody as is the failure to provide medical care. Indeed, the suicidally inclined prisoner is in need of medical care. In Wright v. Wagner, 641 F.2d 239, 242 (5th Cir.1981), a suicide case, the court, citing Gamble, used the deliberate indifference standard.
 
 
 18
 This Court in its recent en banc decision in Wilson v. Beebe, 770 F.2d 578 (6th Cir.1985), has held that where a negligent act of a state officer deprived a person of a liberty interest and the law of the state provided a remedy in damages, there is no procedural due process claim under Sec. 1983, and no substantive due process violation unless there is intentional conduct which meets the "shocks the conscience" test in Rochin v. California, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952). There is no conduct here approaching that level. Michigan provides a damage remedy. The District Court did not err in refusing to give an instruction based on negligence.
 
 
 19
 Although Bell v. Wolfish, supra, deals with actions rather than the failure to act, if we transpose the Bell v. Wolfish standard to failures to act, we would also arrive at a deliberate indifference requirement. If a failure to act is reasonably related to a legitimate governmental objective, the failure to act cannot have the purpose of punishment unless the failure to act was deliberate. Bell v. Wolfish requires an intent to punish. Absent intent to punish, the police chief's failure to provide better suicide prevention training and to learn about and implement a new regulation and the City of Troy's failure to employ better trained jailers do not amount to constitutional violations because the failures arose from the allocation of resources-time, personnel, and money, which constitutes a legitimate governmental purpose. Since the jury found that defendants were not deliberately indifferent, plaintiff could not recover under the Bell v. Wolfish standard for the failures to act. Consequently, the District Court's failure to submit to the jury the question whether the defendants intended to punish the deceased by the failures to act does not amount to plain error.
 
 2. Proximate Cause Instruction
 
 20
 The plaintiff also contends that the District Court erred in its instruction to the jury regarding proximate cause:
 
 
 21
 When I use the words "proximate cause" I mean first that there must have been a connection between the conduct of the defendants which the plaintiff claims was unlawful and the injury complained of by the plaintiff, and, second, that the occurrence which is claimed to have produced the injury was a natural and probably [sic] cause of such conduct of the defendants.
 
 
 22
 There may be more than one proximate cause. To be a proximate cause the claimed wrongful conduct need not be the only cause nor the last cause. A cause may be proximate although it and another cause act at the same time or in combination to produce the occurrence.
 
 
 23
 The plaintiff argues that his proposed instruction, paraphrased from Sutter v. Biggs, 377 Mich. 80, 88, 139 N.W.2d 684 (1966), should have been given instead:
 
 
 24
 If the Defendant's [sic] acts did not directly cause the injury for which Plaintiff seeks recovery, but, instead, subjected Plaintiff to an increased exposure to the risk of occurrence of another event which did occur and did cause Plaintiff's death, the Defendant's [sic] acts are a proximate cause of the injury and the Defendant [sic] may be held liable therefore if that Defendant [sic] should have foreseen that some such injury might be caused by such other event.
 
 
 25
 These instructions are similar although the proposed instruction highlights the idea of an increase in a preexisting risk of harm. It is also somewhat confusing. The District Court did not err in giving the standard general proximate cause instruction. Counsel for the plaintiff was free to explain in his closing argument any facts he claimed as multiple proximate causes which increased the risk of harm to the decedent.
 
 3. Statements by Roberts' Mother
 
 26
 Plaintiff also objects to the admission of a statement by Roberts' mother that she had spoken to him on the telephone shortly after 11:00 a.m. This was less than 60 minutes before he committed suicide. If Roberts actually made a call less than an hour before his death, since the police would have escorted Roberts from his locked cell to the telephone, the failure of the Troy police to check the cell every 60 minutes could not be a proximate cause of his death. His siblings testified the call was made around 9:30 a.m. The District Court received the evidence as a statement against interest. Fed.R.Evid. 804(b)(3). We question whether it was admissible under that exception.
 
 
 27
 Hearsay under the declaration against interest exception is unreliable unless the declarant is aware at the time of making the statement that it is against his interest. See Donovan v. Crisostomo, 689 F.2d 869 (9th Cir.1982); Workman v. Cleveland-Cliffs Iron Co., 68 F.R.D. 562 (N.D.Ohio 1975). Here, Mrs. Roberts was not aware that her statement that she had spoken to her son within an hour of his death was against her interest until she learned about the state regulation requiring checks every 60 minutes. Indeed, when the statement was made, it may have appeared to be in her interest; Mrs. Roberts was expressing her disbelief that her son would have committed suicide so soon after speaking with her.
 
 
 28
 Defendants argue that the statement is not hearsay at all. Fed.R.Evid. 801(d)(2) says that a statement is not hearsay if it is an admission by a party-opponent. Mrs. Roberts as administrator was the original named plaintiff in this case. She was not, however, administrator when she made the statement. By the time of trial, she had died and was replaced as personal representative and named plaintiff by her son Wesley Roberts. The District Court found that her estate was a party since she was one of the two possible beneficiaries of the action. (There was a claim that Wesley Roberts was also survived by an illegitimate son.) The plaintiff argues at length that under Michigan law only the personal representative, not heirs such as parents, can be named parties in a wrongful death action. See, e.g., Maiuri v. Sinacola Construction Co., 382 Mich. 391, 170 N.W.2d 27 (1969). However, courts have recognized "the established principle that admissions by the beneficial party or real party in interest ... are admissible in evidence against the nominal plaintiff representing his interests." A.N. Deringer, Inc. v. United States, 287 F.Supp. 1016, 1023 n. 6 (Cust.Ct.1968). For example, statements by an insurance company were found admissions by a party in a suit brought by the insured in Krebs Pigment & Chemical Co. v. Sheridan, 79 F.2d 479 (3d Cir.1935). That line of authority does not answer the problem that arises in this case because the admission is by only one of two heirs. As to the deceased's son it is hearsay and is not his admission.
 
 
 29
 We need not decide this issue, however, because we find the admission of this evidence harmless. Fisher was unaware that the regulations had been changed from requiring a check during every clock hour to requiring a check every 60 minutes. As a matter of law, his failure to know of this change in regulation does not amount to deliberate indifference. The mere failure to comply with a state regulation is not a constitutional violation. Davis v. Scherer, --- U.S. ----, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).
 
 4. Dismissal of State Claims
 
 30
 The District Court granted summary judgment on certain of plaintiff's state claims and dismissed the remainder. The order of dismissal does not state that the dismissals are without prejudice. However, the memorandum opinion which accompanies the dismissals stated no reason for dismissing them with prejudice.
 
 
 31
 The judge's comments on the first day of trial indicate that the state law claims had been dismissed without prejudice. The court obviously expected the plaintiff to try his negligence claims in state court, and checked with the defense counsel to confirm that the federal case would have no preclusive effect on the negligence action in state court.
 
 
 32
 The exercise of pendent jurisdiction is a matter of discretion for the District Court. See Cemer v. Marathon Oil Co., 583 F.2d 830, 832 n. 2 (6th Cir.1978); Ohio Inns, Inc. v. Nye, 542 F.2d 673, 680 (6th Cir.1976), cert. denied, 430 U.S. 946, 97 S.Ct. 1583, 51 L.Ed.2d 794 (1977); Williams v. Bennett, 689 F.2d 1370, 1378 (11th Cir.1982), cert. denied, --- U.S. ----, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983); Americana Healthcare Corp. v. Schweiker, 688 F.2d 1072, 1087 (7th Cir.1982), cert. denied, 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 434 (1983); Cancellier v. Federated Department Stores, 672 F.2d 1312, 1318 (9th Cir.), cert. denied, 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982). In this case, the District Court did not abuse its discretion in refusing to exercise pendent jurisdiction over the state claims. The introduction of a negligence standard would have complicated the trial of the Sec. 1983 action, and the Michigan law of governmental immunity was at that time uncertain.
 
 
 33
 The action is remanded to the District Court to amend the order dismissing the state claims to recite that the dismissals are without prejudice.
 
 
 34
 The court granted summary judgment to defendant Fisher on the state claims finding that he was performing a discretionary governmental function for which he was immune under state law. With respect to much of his activity that conclusion is correct. However, the Michigan Supreme Court in its recent decision in Ross v. Consumers Power, 420 Mich. 567, 363 N.W.2d 641 (1984), has had occasion to clarify the distinction between ministerial and discretionary functions. Negligence in instructing and supervising students at an outing is held to be ministerial when the decision-making is a relatively minor part of the activity. Provision of safety devices required by the school's safety policy was held to be ministerial. At least some of defendant Fisher's acts may fall into the ministerial category under the Ross definition. To be discretionary they must be "decisional." Id. at 634, 363 N.W.2d 641.
 
 
 35
 We vacate the summary judgment granted on the state claims against Fisher and remand for further consideration under Ross, supra. The District Court may if it wishes decline to exercise pendent jurisdiction on this claim as well. We affirm the summary judgment granted the City of Troy on the state claims. The operation of the jail is a governmental function. Ross, supra.
 
 
 36
 The judgment of the District Court is affirmed on the Sec. 1983 claims and on the state claim against the City of Troy. The remaining claims are remanded for further proceedings consistent with this opinion.
 
 
 37
 CELEBREZZE, Senior Circuit Judge, concurring.
 
 
 38
 I concur in the result reached by the majority. I write separately, however, to discuss the applicability of this Court's recent decision in Wilson v. Beebe, 770 F.2d 578 (6th Cir.1985) to this case.
 
 
 39
 In Beebe, this Court extended the Supreme Court's holding in Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), that a random and unauthorized negligent deprivation of a property interest by a person acting under the color of state law is not actionable as a procedural due process violation under 42 U.S.C. Sec. 1983 (1982) if the state provides an adequate post-deprivation remedy, to deprivations of liberty interests. Thus, Beebe holds that a random and unauthorized negligent deprivation of a liberty interest by a person acting under the color of state law is not actionable under Section 1983 as a procedural due process violation if the state provides an adequate post-deprivation remedy.[1] The majority, in this case, concludes that Beebe would preclude Roberts' administrator from asserting a procedural due process claim premised on negligence against either of the defendants.[2] There are two prerequisites to the application of Beebe to a negligent deprivation: first, the conduct of the person acting under state law must be both random and unauthorized; second, the state must provide an adequate post-deprivation remedy. Beebe, at 583-84. In my view, neither requirement is met in this case. Before I address these two issues, however, I will address a more fundamental question, that is, should the Beebe analysis be applied to deprivations of life.
 
 
 40
 Neither Beebe or Parratt reached the issue of whether their analysis would apply to deprivations of life. The difference in magnitude between the deprivation of prisoner's hobby kit in Parratt and the deprivation of Roberts' life in the present case requires no extended discussion. Hobby kits can be replaced and a paraplegic, as in Beebe, can be given sufficient compensation to make him fictionally "whole." A life, however, once taken is gone; the decedent can never be made even "fictionally" whole. If Section 1983 is to have any substance, it must be available to deprivations of life. Thus, I do not believe that the Beebe analysis is applicable to a case alleging a negligent deprivation of life. Nevertheless, as I previously noted, even accepting the Parratt-Beebe paradigm, I believe that those decisions are inapposite.
 
 
 41
 The first question in determining if Beebe is applicable to a deprivation of a protected interest is whether the conduct by the person acting under the color of state law was "random and unauthorized." Beebe, at 584. The critical inquiry, in this regard, is whether the state had an adequate opportunity to provide procedural due process before the deprivation occurred. Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36, 102 S.Ct. 1148, 1157-58, 71 L.Ed.2d 265 (1982). I do not believe that the failure of the police officers to screen Roberts for suicidal tendencies can be deemed "random and unauthorized."
 
 
 42
 In this case, defendant Fisher, as Chief of Police, was responsible for managing the jail. Fisher was sent correspondence from the Michigan Department of Corrections indicating the high suicide rate among pre-trial detainees during the first twenty-four hours of incarceration and noting the availability of training courses and procedures to detect and prevent suicides. Further, the Department of Corrections explicitly offered to send Fisher a training course in suicide detection and prevention. Despite this apparent knowledge and a suicide attempt in the City of Troy county jail six months before Roberts', Fisher took no action. In my view, the information sent to Fisher by the Michigan Department of Corrections and the prior suicide attempt in the jail gave Fisher a sufficient opportunity to institute adequate suicide screening procedures. Moreover, since no pre-trial detainee was screened for suicidal tendencies, the failure to screen Roberts' was consistent with this non-screening policy. Consequently, I do not believe that the failure to screen Roberts can be deemed "random and unauthorized."[3] I also believe that Beebe is inapplicable because Michigan fails to provide an adequate post-deprivation remedy to Roberts.
 
 
 43
 As the Supreme Court held in Parratt, the post-deprivation remedy must be at a, "meaningful time and in a meaningful manner," Parratt, 451 U.S. at 540, 101 S.Ct. at 1915 (quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). The majority without any analysis simply asserts that Michigan provides a remedy in damages. The fact that Roberts' heirs may have a cause of action under Michigan's wrongful death statute, see Mich.Comp.Laws Ann. Sec. 600.2922 (1968 & Supp.1985), however, simply misses the point. A wrongful death action inures to the benefit of Roberts' heirs--not to Roberts. As to Roberts, I do not believe that such a wrongful death action can be said to come within a "meaningful time." Nor do I believe that providing damages to whoever happens to stand in Roberts' line of intestate succession is an adequate remedy. Thus, since Michigan fails to provide an adequate post-deprivation remedy, Beebe, by its own terms, is inapplicable.
 
 
 44
 With the foregoing reservations, I concur in the result which the majority reaches.
 
 
 
 *
 Honorable C.G. Neese, Senior Judge, of Nashville, Tennessee, who retired as a United States District Judge for the Eastern District of Tennessee, sitting by designation and assignment
 
 
 [1]
 The summary judgment in favor of the police officers and their dismissal are not appealed
 
 
 [2]
 The assault cases are based on Estelle v. Gamble's interpretation of the eighth amendment. Lovell relied on Withers which in turn relied upon Woodhous v. Virginia, 487 F.2d 889 (4th Cir.1973) in which the Fourth Circuit, relying upon Estelle v. Gamble, found a violation of the right to be free from cruel and unusual punishment when prison authorities failed to prevent attacks by prisoners on prisoners. Gullatte also relied on the earlier Fourth Circuit cases
 
 
 [1]
 Beebe, however, does not preclude substantive due process violations which shock the conscience of the court. Beebe, at 582-83
 
 
 [2]
 Since the majority holds that the deliberate indifference standard applies to this case, any discussion of Beebe's applicability to a negligent deprivation is, of course, dictum. Moreover, Roberts' administrators have not alleged that the failure to adequately detect and prevent pre-trial detainees' suicides violated procedural due process. Rather, as the majority points out, both parties have treated this case as equivalent to an Eighth Amendment failure to provide medical care case. Thus, like the majority, I do not reach the merits of such a procedural due process challenge
 
 
 [3]
 The determining of whether the failure to screen Roberts for suicidal tendencies was random and unauthorized must not be either confused or equated with the determining of whether the City of Troy had a practice or policy of not screening pre-trial detainees for suicidal tendencies. The Supreme Court has held that the critical inquiry in the former determination is whether the state had an opportunity to provide procedural process before the deprivation occurred. Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36, 102 S.Ct. 1148, 1157-58, 71 L.Ed.2d 265 (1982). In contrast, in determining whether a city has a custom or policy the central inquiry is whether the wrong can be attributed to municipal decision makers. City of Oklahoma City v. Tuttle, --- U.S. ----, 105 S.Ct. 2427, 2435-36, 85 L.Ed.2d 791 (1985) (Rehnquist, J., plurality opinion). In a case like the present, in which the evidence needed to establish that the failure to screen Roberts was not an unauthorized and random act and the evidence required to show a policy or custom of the City of Troy not to screen pre-trial detainees for suicide risks is overlapping, the distinction tends to become muddled. Nevertheless, ideologically the two issues are far apart: Beebe concerns when a person may assert that a negligent deprivation of a protected interest has violated procedural due process under Section 1983; Tuttle pertains to when city officials have taken sufficient action to justify holding the city liable under Section 1983