NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0009n.06
Filed: January 4, 2005

No. 03-2423

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| CHRISTINA CROCKER, Personal Representative of the Estate of CARL WILLIAM TARZWELL, JR., Deceased, | ) ) ) ) |
| *Plaintiff-Appellant*, | ) ) ) On Appeal from the United States |
| v. | ) District Court for the Eastern ) District of Michigan ) No. 01-CV-40240 ) ) |
| COUNTY OF MACOMB, SHERIFF MARK HACKEL, CORRECTIONS OFFICER ELIZABETH CARVER, CORRECTIONS OFFICER RONALD MURPHY, and CORRECTIONS OFFICER MICHAEL DIXON, | ) ) ) ) ) ) ) ) ) |
| *Defendants-Appellees.* | ) |

Before: **BOGGS, Chief Judge; GILMAN, Circuit Judge**; and **WEBER, Senior District Judge**.[1]

**PER CURIAM.**

---

[1] The Honorable Herman J. Weber, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

**OPINION**

Plaintiff-Appellant Christina Crocker, Personal Representative of the Estate of Carl William Tarzwell, Jr., deceased, brought this suit under 42 U.S.C. § 1983 and under Michigan law against defendants-appellees Macomb County and several individual law enforcement officers and corrections officers. The action arises out of the suicide death of Tarzwell at the Macomb County Jail. Plaintiff's complaint alleges violations of Tarzwell's constitutional rights to life and liberty protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and his Fourth Amendment right to be secure against unreasonable searches and seizures. The complaint also includes a claim for gross negligence actionable under Michigan law.

The district court granted summary disposition in favor of two defendants initially named in the suit, Deputy Gloude and Deputy D. Santini.[2] The district court issued a subsequent order granting summary judgment in favor of each of the remaining defendants.

Plaintiff does not challenge on appeal the dismissal of defendants Gloude and Santini or the dismissal of the state-law claims against the remaining defendants. Nor does plaintiff challenge the dismissal of defendant Sheriff Mark Hackel from the lawsuit. Plaintiff does challenge the district court's grant of summary judgment in favor of defendant Macomb County and individual defendants Elizabeth Carver, Ronald Murphy, and Michael Dixon. Plaintiff argues there is evidence that the individual defendants were deliberately indifferent to Tarzwell's serious medical needs--specifically, his serious risk of suicide. Plaintiff further argues that Macomb County may be held liable for its own customs and practices reflecting deliberate indifference to such risk. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

---

[2] Deputy Gloude's first name is not listed on the complaint.

2

I.

In the early morning hours of June 20, 2001, Tarzwell drove to the home of Jere Roske, the maternal grandmother of one of his daughters, to pick up another daughter. Ms. Roske observed that Tarzwell was acting abnormally and she believed he was drunk. She refused to allow Tarzwell to take his daughter with him. Tarzwell became furious and drove to a nearby bar. Ms. Roske was informed over the telephone that Tarzwell was at the bar and was threatening to come back to her house and break her windows. Ms. Roske telephoned the police for help, and Tarzwell returned to her house. The police arrived at the scene and asked Tarzwell for his identification. Tarzwell claimed that he had no identification and gave the police an incorrect name and false birth date. Tarzwell's girlfriend, who was also the daughter of Ms. Roske, came to the scene and gave the police Tarzwell's correct name and birth date. A background check disclosed that Saint Clair County had an outstanding child support warrant for Tarzwell. The police issued Tarzwell a misdemeanor citation for presenting false identification and placed him under arrest for the outstanding warrant.

Defendant Murphy received Tarzwell at the Macomb County Jail at approximately 3:00 a.m. According to Murphy, Tarzwell smelled of alcoholic beverages, but could walk and talk without difficulty. Plaintiff disputes Murphy's observation that Tarzwell exhibited no difficulty in walking and talking. Tarzwell asked Murphy to retrieve his hat, which he had left with the arresting officer, and then asked to use a telephone. Defendant Murphy placed Tarzwell in a holding cell with a telephone and explained how to make a call. Tarzwell then proceeded to make more than twenty telephone calls to numerous parties.

At approximately 3:20 a.m., defendant Dixon performed a "detex round" at the jail, during

3

which the assigned officer looks into the cells for the safety of the inmates.[3] Dixon does not recall seeing Tarzwell during his round. Carver had performed a detex round at approximately 2:00 a.m., prior to Tarzwell's arrival at the jail. Carver performed no other rounds until after an inmate/trusty discovered Tarzwell in his cell with a telephone cord wrapped around his neck, which occurred some time around 4:20 a.m. Medical help was summoned when the trusty discovered Tarzwell, but Tarzwell had strangled himself and could not be saved.

Plaintiff has provided the following description of the customs and practices and the physical set-up of the Macomb County Jail at the time Tarzwell committed suicide: The jail contained two detoxification ("detox") cells, which were located near the officers' duty station and were built to provide for constant visualization. The booking officer did not have the authority to place a recent detainee in a detox cell. Instead, the officer would briefly talk to the detainee and then admit him to holding cell 10, which could not be viewed from the booking officers' work center, to await booking or processing. A formal screening or interview, including a mental health screening, of a detainee occurred only at the time of booking or processing. Holding cell 10 was visually inspected during detex rounds, which were to be conducted at least once each hour and more frequently for high-risk inmates. A regulation required that there be no posters or other materials on the cell windows in order to permit an unobstructed view of the cells and to promote inmate safety. Jail employees, however, had posted four papers that blocked visibility of the phone area in holding cell 10. The cord of the phone in the cell, which was supposed to be fully encased in a metal sheathing, had been pulled out approximately three inches. This condition had existed for several weeks prior to Tarzwell's death.

---

[3] "Detex" is a term used at the Macomb County Jail to denote a foot patrol of the jail.

Plaintiff alleges that Tarzwell's suicide was the fifth suicide in less than one year at the Macomb County Jail. Plaintiff contends that Tarzwell fit the profile of a person at high risk for suicide in that he was (1) a single white male, (2) who was intoxicated and/or a drug user, (3) who had been arrested for a non-violent offense, (4) who had attempted suicide in the past, and (5) who was isolated in jail during the first 24 hours of confinement. Plaintiff claims that Tarzwell had been hospitalized previously for a suicide attempt; information on the Law Enforcement Information Network (LEIN) reflected entry of a 1998 "Mental Order" stating that "Mental Behavior May Result in Harm to Self or Others"; and less than three months before Tarzwell's death, the Macomb County Sheriff's Department had received information that he "was going to commit suicide" and that "attempts in the past involved cutting of teh (sic) wrist."

## II.

The district court determined that, in order to prove a violation of Tarzwell's due process rights, plaintiff had to establish that (1) Tarzwell exhibited a strong likelihood of committing suicide, and (2) defendants acted with deliberate indifference to that threat. The district court found that plaintiff had not made either showing. The court determined that on the night in question, Tarzwell was not acting in an abnormal manner that would indicate that he was suicidal. The court further found no evidence that any individual defendant actually knew that Tarzwell faced a serious risk of suicide and no evidence that defendants were deliberately indifferent to such a risk.

The district court also determined that plaintiff had failed to show that Macomb County had a deliberate and discernible policy that caused Tarzwell's suicide and that could support the imposition of liability on the County. The court found that the County could not be held liable for a failure to train since plaintiff had failed to show a violation of Tarzwell's rights by an individual

5

defendant.

III.

We review a grant or denial of summary judgment *de novo*. ***Thomas v. United States,*** 213 F.3d 927, 929 (6th Cir. 2000). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, we view the factual evidence and draw all reasonable inferences in favor of the non-moving party. ***National Enterprises, Inc. v. Smith***, 114 F.3d 561, 563 (6th Cir. 1997). To prevail, the non-movant must show sufficient evidence to create a genuine issue of material fact. ***Klepper v. First Am. Bank***, 916 F.2d 337, 342 (6th Cir. 1990)(citing ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986)). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the plaintiff." ***Id.*** (quoting ***Anderson v. Liberty Lobby, Inc***., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512 (1986)).

A plaintiff may establish a claim under 42 U.S.C. § 1983 by showing that (1) a person acting under color of state law (2) deprived the plaintiff of rights secured by the United States Constitution or laws of the United States. ***Adickes v. S. H. Kress & Co.,*** 398 U.S. 144, 150, 90 S.Ct. 1598, 1604 (1970). Local government units may be sued under § 1983. ***Monell v. Dept. of Soc. Servs. of the City of New York,*** 436 U.S. 658, 690, 98 S.Ct. 2018, 2035-36 (1978).

Pretrial detainees have a constitutional right under the Fourteenth Amendment to the same protection afforded convicted prisoners who have serious medical needs. ***Heflin v. Stewart County, Tenn***., 958 F.2d 709, 714 (6th Cir. 1992)(citing ***Roberts v. City of Troy,*** 773 F.2d 720, 723 (6th Cir.

6

1985)); *see also Horn v. Madison County Fiscal Court,* 22 F.3d 653, 660 (6th Cir. 1994)(citing *Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 1877 (1979); *Roberts,* 773 F.2d at 723)). This court and other circuits have held that the cruel and unusual punishment analysis utilized in *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291 (1976), applies to pretrial detainees who assert a denial of such protection. *Danese v. Asman,* 875 F.2d 1239, 1243 (6th Cir. 1989)(citing *Roberts,* 773 F.2d at 722); *see also Horn,* 22 F.3d at 660. Under the *Estelle* analysis, jail officials violate detainees' due process rights when the officials "exhibit a deliberate indifference to the medical needs of detainees that is tantamount to an intent to punish." *Id.* at 1243. A detainee's psychological needs manifesting themselves in suicidal tendencies may constitute serious medical needs for purposes of a pretrial detainee's due process claim. *Horn,* 22 F.3d at 660 (citations omitted); *see also Barber v. City of Salem,* 953 F.2d 232, 239-240 (6th Cir. 1992)(determining in the context of a jail suicide that the appropriate inquiry for liability under § 1983 is "whether the decedent showed a strong likelihood that he would attempt to take his own life in such a manner that failure to take adequate precautions amounted to deliberate indifference to the decedent's serious medical needs.").

In order to satisfy the deliberate indifference standard, a prison official must know of and consciously disregard an excessive risk to the detainee's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 1979 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837, 114 S.Ct. at 1978. A fact-finder may conclude that the prison official knew of a substantial risk from the very fact that the risk was obvious. *Id*. at 842, 114 S.Ct. at 1981.

IV.

The question for review is whether there is sufficient evidence of deliberate indifference to

Tarzwell's serious medical needs for this case to go to the jury. For the reasons stated below, we hold that the evidence is not sufficient to permit a reasonable jury to determine that the individual defendants exhibited deliberate indifference to a known risk that Tarzwell would attempt suicide.

The evidence does not show that any individual defendant had information indicating that Tarzwell was a suicide risk. There is no evidence in the record to suggest that any defendant observed the scars from Tarzwell's previous suicide attempt while Tarzwell was alive. Nor is there any evidence that Tarzwell exhibited suicidal tendencies at any time between his arrest and his suicide. There is likewise no evidence to indicate that any individual defendant was aware of Tarzwell's prior history as listed on the LEIN or knew that the Macomb County Sheriff's Department had received information three months prior to Tarzwell's death that he was going to commit suicide and had attempted to do so in the past.

This leaves only plaintiff's argument that Tarzwell fit the profile of an individual who is purportedly "most likely to commit suicide." Assuming that the profile is statistically valid and that Tarzwell possessed the characteristics of an individual who fits the profile, this alone is insufficient to put defendants on notice that Tarzwell himself was likely to attempt suicide. Jail officials cannot be charged with knowledge of a particular detainee's high suicide risk based solely on the fact that the detainee fits a profile of individuals who purportedly are more likely to commit suicide than those who do not fit the profile in all respects. This is particularly true since if past suicide attempts are factored out, the profile described by plaintiff casts a very wide net, and there is no evidence that the majority of detainees who fit the profile in those respects that would be apparent to an observer are at risk for attempting suicide. Thus, absent evidence that any individual defendant knew Tarzwell had a serious medical need manifesting itself in suicidal tendencies or that such need was obvious,

8

plaintiff cannot prevail on the Fourteenth Amendment claim against the individual defendants under the *Estelle* analysis.

As in another jail suicide case decided by this court, because there is no evidence that the individual defendants knew Tarzwell was at risk of attempting suicide, "[t]he 'right' that is truly at issue here is the right of a detainee to be screened correctly for suicidal tendencies and the right to have steps taken that would have prevented suicide." *See Danese*, 875 F.2d at 1244. Indeed, plaintiff identifies the right which forms the basis for the alleged constitutional violation in this manner by arguing that although Officer Murphy knew that Tarzwell met certain criteria for a suicide risk, Murphy failed to take steps to confirm the risk, such as checking law enforcement records or asking Tarzwell about his suicidal ideation, and did not conduct any screening of Tarzwell when he was delivered to the jail.

We found in *Danese* that a right to be screened correctly for suicidal tendencies and to have steps taken to prevent suicide was not clearly established as of the date of that decision, noting that, "[i]t is one thing to ignore someone who has a serious injury and is asking for medical help; it is another to be required to screen prisoners correctly to find out if they need help." *Id.* at 1244. Plaintiff has not cited any case decided by the United States Supreme Court or by this Circuit since *Danese* finding a constitutional right to be screened for suicidal tendencies on the part of either a pretrial detainee or a prisoner entitled to the protections of the Eighth Amendment. Consistent with our prior decisions addressing this issue, we hold that the individual defendants' failure to screen Tarzwell for suicidal tendencies or ideation and to take measures that would have prevented his suicide are not tantamount to punishment under the circumstances of this case and cannot serve as the basis for imposing liability on the individual defendants under § 1983. Accordingly, the district

9

court did not err by granting summary judgment in favor of the individual defendants.

V.

Plaintiff presents two different theories of liability as to defendant Macomb County. First, plaintiff claims that the County may be held liable under § 1983 based on its failure to provide adequate training in suicide prevention. Second, plaintiff claims that the County can be held liable for its own customs and practices reflecting deliberate indifference based on prison conditions. Plaintiff alleges that the County was aware of Tarzwell's mental instability, the prior suicides in the Macomb County Jail, and the dangers presented by its facilities, but the County's customs, practices, and procedures show a deliberate indifference to a known suicide risk.

A county may be held liable under § 1983 when a county policy or custom caused the injury or was the moving force behind the constitutional violation. *Monell,* 436 U.S. at 694, 98 S.Ct. at 2038; *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1203 (1989). Inadequate training of officers may serve as a basis for liability under § 1983 only where the failure to train amounts to deliberate indifference to the rights of individuals with whom the officers come into contact. *City of Canton,* 489 U.S. at 388, 109 S.Ct. at 1204. If the plaintiff fails to establish a constitutional violation by an individual officer, the local government unit cannot be held liable for a failure to train under § 1983. *Watkins v. City of Battle Creek,* 273 F.3d 682, 687 (6th Cir. 2001)(citing *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571 (1986)). More specifically, where there exists no constitutional violation for failure to take special precautions to prevent suicide, then there can be no constitutional violation on the part of a local government unit based on its failure to promulgate policies and to better train personnel to detect and deter jail suicides. *Barber,* 953 F.2d at 240.

Because no individual defendant violated Tarzwell's constitutional rights, Macomb County

10

necessarily is not liable to plaintiff under a failure to train theory or on the theory that the County failed to promulgate effective policies for suicide prevention. Even if the County could be held liable absent liability on the part of an individual defendant, plaintiff has not identified any policy or custom that evidences deliberate indifference on the County's part either to the risk that Tarzwell would try to kill himself or to the problem of suicide attempts by pretrial detainees in general. The court notes in this regard that the alleged failure to comply with a regulation governing the visibility of holding cells alone does not rise to the level of a constitutional violation. *See Roberts,* 773 F.2d at 726 (citing *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012 (1984))("The mere failure to comply with a state regulation is not a constitutional violation."). Finally, plaintiff has not shown that defendant had a deliberate and discernible county policy to maintain a jail that was inadequately designed and equipped for the prevention of suicides. For these reasons, the district court did not err by granting summary judgment in favor of Macomb County.

VI.

In accordance with the foregoing, the judgment of the district court is **AFFIRMED**.