NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0398n.06

Case No. 15-4150

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 15, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| STEVEN E. BROUGHTON, | ) | |
| | ) | |
| *Plaintiff-Appellant*, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| PREMIER HEALTH CARE SERVICES, INC.; | ) | DISTRICT OF OHIO |
| WILLIAM COLE; CHERIE THOMAS; TOM | ) | |
| ARISS, Individually and as Warren County | ) | |
| Commissioner; PAT SOUTH, Individually and as | ) | |
| Warren County Commissioner; DAVID G. | ) | O P I N I O N |
| YOUNG, Individually and as Warren County | ) | |
| Commissioner; CHRISTINA FINNEY | ) | |
| HUBBARD, | ) | |
| | ) | |
| *Defendants-Appellees*. | ) | |

BEFORE:    COLE, Chief Judge; McKEAGUE and GRIFFIN, Circuit Judges.

COLE, Chief Judge.  Steven Broughton attempted to commit suicide while incarcerated at the Warren County Jail in Lebanon, Ohio.  Although he was rescued by corrections officers, Broughton filed suit under 42 U.S.C. § 1983 claiming that Warren County, Premier Health Care Services, Inc., and various officials violated his right to be free from cruel and unusual punishment.  *See Estelle v. Gamble*, 429 U.S. 97 (1976).  The district court entered summary judgment for the defendants.  Because no reasonable jury could conclude that these defendants were deliberately indifferent to Broughton's risk of suicide, we affirm.

I.

In November 2009, Broughton pleaded guilty to possession of child pornography, *see* Ohio Rev. Code § 2907.323(A)(3), and was sentenced to 60 days' imprisonment followed by three years of probation. While serving his 60-day sentence at the Warren County Jail, Broughton notified corrections officials that he was "depressed" and "feeling suicidal." He was accordingly placed on "suicide watch," which consisted of being isolated "in a cell with no sheets . . . for 23 hours a day" and subjected to observation at 15-minute intervals. These responsive measures worked: Broughton did not attempt to take his own life during his 2009 incarceration, and there is no indication that he felt suicidal during his three subsequent visits to the Warren County Jail (all for probation violations).

Nearly two years later, in June 2011, Broughton was arrested for his fourth probation violation stemming from that underlying conviction. He was again taken to the Warren County Jail, where a booking officer conducted an initial medical screening and a nurse conducted a medical evaluation. Broughton represented that he had a general history of "psychiatric disorders," required several prescription medications, and had attempted suicide a "long time ago" but was "not thinking about [it] now." He also filled out an "inmate sick call" form, requesting to speak with a "nurse about possible withdraw[al] from prescription med[ication]." The next day, a nurse conducted a physical examination and determined that Broughton's respiration was "easy" and "even," his speech was "clear," his gait was "steady," and that he was in no "pain" or "discomfort." Two days after that, medical personnel provided Broughton with all of his prescriptions, other than Ambien.

Broughton was not entirely forthcoming. Though he disclaimed any current inclination towards self-harm, one fact remained undisclosed: Broughton had attempted suicide by overdose

a mere nine days before his 2011 arrest. As it happens, Broughton has attempted to overdose on drugs "[o]ver a dozen" times since he was nine years old. None of this, however, was known to the medical staff at the Warren County Jail. In fact, Broughton purposely withheld his history of mental illness and attempted suicide because, in his words, he "didn't want to be placed on suicide watch."

Broughton was ultimately admitted to the general population and, after getting into an argument with his cellmate, placed in disciplinary segregation without any suicide prevention protocols. About a day and a half later, on July 1, 2011, he attempted to kill himself while alone in his cell. When corrections officers went to check on Broughton, they discovered him hanging by a sheet. The corrections officers managed to cut him down, resuscitate him, and transport him to a hospital, where he recovered.

Broughton later filed this § 1983 suit in the Southern District of Ohio against Warren County (and its Commissioners Tom Ariss, Pat South, and David G. Young) and Premier Health Care Services, Inc. (and its medical staff Dr. William Cole, Nurse Christina Finney Hubbard, and Nurse Cherie Thomas). Broughton alleged that the defendants violated his right to be free from cruel and unusual punishment because they were "deliberately indifferent" to his serious risk of suicide. *See Estelle*, 429 U.S. at 104. He also included a supplemental medical malpractice claim under Ohio law.

The defendants moved for summary judgment, arguing that Broughton could not marshal any "subjective evidence" of deliberate indifference on the part of the municipality, the healthcare contractor, or any named official. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The district court agreed. After allowing time for discovery, the court concluded that "there was no [apparent] manifestation of suicidal ideation from which [medical staff] could perceive a

strong likelihood of suicide," and thus, Broughton failed to show "that there is a genuine issue of material fact as to whether the [defendants] acted with deliberate indifference." The court then granted summary judgment for the defendants, and declined to exercise supplemental jurisdiction over Broughton's state-law claims. This appeal followed.

## II.

We review the district court's grant of summary judgment *de novo*, drawing all reasonable inferences in favor of the nonmoving party. *Brown v. Chapman*, 814 F.3d 447, 464 (6th Cir. 2016). Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Our inquiry is familiar: Did the evidence create "sufficient disagreement to require submission to a jury," or was it "so one-sided" that the defendants "must prevail as a matter of law"? *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

## A.

Broughton maintains that the district court erred in granting summary judgment. The court, in his view, "gloss[ed] over several facts" upon which a reasonable jury could have concluded that the defendants violated his Eighth and Fourteenth Amendment rights. To support this claim, Broughton marshals a barrage of undifferentiated "circumstantial evidence" which, he says, the district court overlooked. We disagree.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." The government violates that right when, among other things, it acts with "deliberate indifference to serious medical needs of prisoners." *Estelle*, 429 U.S. at 104. Deliberate indifference claims have two components—one objective and one subjective. *Farmer*, 511 U.S. at 834. The objective component requires proof of a "sufficiently serious" medical need. *Id.* (quoting *Wilson*

*v. Seiter*, 501 U.S. 294, 298 (1991)). In this case, the district court concluded that Broughton's "suicidal tendencies" amounted to an objectively serious medical condition. *See Comstock v. McCrary*, 273 F.3d 693, 703–04 (6th Cir. 2001). All parties agree with that conclusion.

The determinative question here, rather, is subjective: Did the defendants "know[] that [Broughton] face[d] a substantial risk of serious harm and disregard[] that risk by failing to take reasonable measures to abate it"? *Farmer*, 511 U.S. at 847. At summary judgment, Broughton was required to "make a showing sufficient to establish the existence" of deliberate indifference, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), because he shoulders "the onerous burden of proving the [defendants'] subjective knowledge" at trial, *see Comstock*, 273 F.3d at 703.

To start, Broughton argues that medical staff "failed to follow the written protocols regarding the screening of inmates." That fact, even if true, hardly establishes deliberate indifference. We have long recognized that "the right to medical care for serious medical needs does not encompass the right 'to be screened correctly for suicidal tendencies.'" *Id.* at 702; *see also Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (per curiam) ("No decision of this Court establishes a right to the proper implementation of adequate suicide prevention protocols.").

Broughton next argues that the medical staff should have been alerted to his serious risk of suicide. He bases this claim on his "complaints of withdrawal symptoms" and his "lack of access to his insomnia medication." As we have acknowledged, "[s]uicide is a difficult event to predict and prevent and often occurs without warning." *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005). Thus, in the suicide context, a plaintiff must show that there was a "strong," "obvious," or "clearly foreseeable" likelihood "that he would attempt to take his own life in such

a manner that failure to take adequate precautions amounted to deliberate indifference." *Id.* (quoting *Barber v. City of Salem*, 953 F.3d 232, 239–40 (6th Cir. 1992)).

Broughton's symptoms and behaviors did not clearly indicate a risk of self-harm. Rather, his complaints were primarily relevant to the physical indicators of withdrawal—complaints that were promptly and appropriately addressed by the medical staff. *See Grose v. Corr. Med. Servs., Inc.*, 400 F. App'x 986, 988 (6th Cir. 2010) (noting there was "no proof that [medical staff] perceived [plaintiff's] ailment as anything other than [the physical symptoms of] overuse syndrome"); *Crocker ex rel. Estate of Tarzwell v. Cty. of Macomb*, 119 F. App'x 718, 723 (6th Cir. 2005) (per curiam) (noting that there was no evidence that the decedent "exhibited suicidal tendencies at any time between his arrest and his suicide"). The only prescription medication Broughton did not receive was Ambien, which was reasonably withheld because he admitted to abusing the drug by "snort[ing]" it. Further, even if this treatment somehow neglected Broughton's risk of suicide, it is well-settled that ordinary negligence or medical malpractice cannot satisfy the subjective component of deliberate indifference: "When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock*, 273 F.3d at 703.

Broughton goes on to argue that the defendants had general "knowledge" of his past "mental health problems." But there is no evidence to suggest these particular defendants had actual knowledge of Broughton's past suicidal thoughts—if anything, the record indicates that the doctors and nurses were surprised by his attempted suicide. *See Grabow v. Cty. of Macomb*, 580 F. App'x 300, 304, 310 (6th Cir. 2014) (concluding that prison official's failure to take note of an electronic "alert" based on the inmate's previous "suicide watch status" did not amount to

subjective evidence of deliberate indifference). Moreover, Broughton's three intervening and uneventful stints in the Warren County Jail suggested that he was no longer suicidal. In the same vein, Broughton makes much of an attempt by his step-father to notify the jail of his then-recent drug overdose. But this does not change our analysis. Broughton's step-father never actually reached the jail's medical staff, and deliberate indifference requires actual knowledge by the particular official. *See Gray*, 399 F.3d at 616.

Finally, Broughton notes that he refused "recreation, medication, and a meal" for a day or so while in disciplinary segregation. This behavior alone does not obviously indicate that Broughton was contemplating suicide. *See Soles v. Ingham Cty.*, 148 F. App'x 418, 419 (6th Cir. 2005) (noting that "the deceased had not expressed suicidal thoughts for a period of approximately two weeks" and "there was no glaring, new factor closely related to suicidal thoughts" that defendants failed to investigate). Indeed, medical personnel had little reason to suspect that Broughton would attempt suicide because he purposely misinformed them regarding his medical history.

While Broughton's disclaimer of suicidal ideation does not automatically insulate the defendants from liability, it does undermine the claim that they willfully ignored his past medical history and current symptomology. *See, e.g.*, *Grabow*, 580 F. App'x at 304 (noting that the plaintiff said that she "never attempted suicide and did not feel like she wanted to hurt herself at that time"); *Jerauld ex rel. Robinson v. Carl*, 405 F. App'x 970, 978 (6th Cir. 2010) (noting that the plaintiff "did not express suicidal ideations . . . to any . . . jail personnel"); *Perez v. Oakland Cty.*, 466 F.3d 416, 434–35 (6th Cir. 2006) (Griffin, J., concurring) (concluding that a plaintiff who "appeared and claimed to be in a much-improved state of mind" could not establish

deliberate indifference); *Gray*, 399 F.3d at 614 (noting that the defendant "had not expressed any suicidal intent").

Even taking all of this circumstantial evidence together, it cannot be said that these defendants subjectively perceived facts from which to infer Broughton's risk of suicide, that they did in fact draw the inference, and that they then disregarded the risk. *See Comstock*, 273 F.3d at 703. In sum, the record indicates that these defendants were not alerted to Broughton's serious risk of self-harm, nor has there been any suggestion that the medical staff desired to bring about Broughton's suicide. To the contrary, they saved him. The medical staff took him at his word when he said that he was "not thinking about" suicide, as confirmed by his mostly normal behavior. Even if they were negligent, or committed medical malpractice, we have consistently held that the constitutional standard of deliberate indifference "requires more." *See Mitchell v. Hininger*, 553 F. App'x 602, 604 (6th Cir. 2014) (explaining that deliberate indifference is "something akin to criminal recklessness").

B.

Broughton also contends that Warren County and Premier Health Care Services violated his Eighth and Fourteenth Amendment rights by failing to properly train their employees on "mental health and suicide prevention" protocols. *See City of Canton v. Harris*, 489 U.S. 378, 390 (1989). But, as discussed above, Broughton has not shown deliberate indifference on the part of any individual official. He concedes that absent an underlying constitutional injury of this sort, there can be no municipal liability for an alleged failure to train. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014).

III.

The district court's judgment is affirmed.